*In re* ESTATE OF BERNICE JOHNSON WINSTON, Deceased.—(ROBERT STANLEY JOHNSON, Petitioner-Appellant, *v.* THE NORTHERN TRUST CO., Ex'r of the Estate of Bernice Johnson Winston, Respondent-Appellee.)

First District (4th Division)    No. 80-910

Opinion filed July 9, 1981.—Rehearing denied August 26, 1981.

William I. Goldberg and John H. Ward, both of Antonow & Fink, of Chicago, for appellant.

Sam Elliott Pfeffer, of Pfeffer, Becker, Gabric & Cerveny, Ltd., and Gerald J. Mannix, both of Chicago, for appellee.

Mr. JUSTICE LINN delivered the opinion of the court:

Petitioner, Robert Johnson, filed a claim in the probate division of the circuit court of Cook County against the estate of his deceased mother, Bernice Johnson Winston. Respondent, Northern Trust Co., is the executor of the estate. Petitioner's claim essentially alleged that his mother, during her lifetime, had held certain assets—insurance proceeds, an interest in a partnership, a beneficial interest in a land trust, and 100 shares of stock—in trust for the benefit of petitioner and his brother, Harold Johnson; that his mother as trustee had converted the assets to her own use; and that petitioner was entitled to an accounting of those assets or the proceeds received by his mother from her conversion of those assets.

Following a bench trial, the trial court granted petitioner's claim as far as the insurance proceeds were concerned but denied petitioner's claim concerning the other assets. Petitioner appeals.

We affirm in part, reverse in part, and remand for further proceedings.

*Factual Background*

In November 1967, petitioner's father, Samuel Johnson, died. His estate was probated in Cook County. He was survived by his wife, Bernice, and his two sons, petitioner and Harold. Both sons were adults at the time of Samuel's death. Petitioner lived in Europe and remained there throughout the time his father's estate was being probated. The probate of the estate was closed in late 1969.

In his will, Samuel named the Northern Trust Co. as executor. Under the will, Samuel specifically bequeathed $2,500 to each of his sons (petitioner received this sum) and bequeathed all of his stock and interest

in "International Galleries, Inc." to Bernice. The residue of Samuel's estate was to be turned over to the "acting trustee" of a trust Samuel had created before his death.

The trust referred to in Samuel's will was created in 1953 and amended and restated in 1963. The trust res, when created, consisted of several insurance policies on Samuel's life payable to the "corporate trustee" of the trust. The trust designated respondent, Northern trust, as the "corporate trustee" and Bernice as the "individual trustee." The majority of the terms of the trust were activated by Samuel's death. The corporate trustee was ordered to take possession of the life insurance proceeds and to hold, manage, and distribute these proceeds and any other assets which came to the trust by way of Samuel's will as follows.

Half of the assets were to be made part of "Trust A" and half part of "Trust B." The corporate trustee was ordered to pay the income from both Trust A and B to Bernice in regular installments during her life. The corporate trustee was given the discretionary authority to distribute such sums of the principal of Trust A and B to Bernice during her life as it deemed necessary for her comfortable maintenance and welfare, but the corporate trustee could not distribute any of the principal of Trust B to Bernice until the principal of Trust A was exhausted.

Bernice was given a general testamentary power of appointment over the principal of Trust A. If Bernice failed to exercise the power, the remainder of Trust A was to go to Trust B. Bernice had no power of appointment over the principal of Trust B, and upon Bernice's death the remainder in Trust B was to go to petitioner and his brother, Harold, in equal shares.

The corporate trustee was given all of the usual discretionary powers to manage and transfer the trust principal. Bernice, as individual trustee, was to have all of the same duties as the corporate trustee and was to exercise all powers of the corporate trustee jointly with the corporate trustee. However, as individual trustee, Bernice was specifically prohibited from exercising any power relating to the distribution of income or principal to the beneficiaries. If Northern Trust, for any reason, declined to act as corporate trustee or was removed from that position, Bernice could appoint a new corporate trustee.

Shortly after Samuel's death, Northern Trust determined that it would not act as corporate trustee of the insurance trust and would not act as executor of Samuel's estate. This decision was based on representations of Bernice and Bernice's attorney that the proceeds from Samuel's insurance policies and the value of assets constituting the residue of Samuel's estate would not be enough to justify Northern's participation in the trust, and the total value of Samuel's estate would not be enough to justify Northern's participation as executor of the estate. (In the present

case, Northern is not being sued in its capacity as trustee of the insurance trust or as executor of Samuel's estate, and its decision to decline to act as trustee or executor is not being challenged as improper.)

As a result of Northern's decision, Bernice was made administratrix of Samuel's estate with the will annexed. Bernice did not appoint a new corporate trustee of the insurance trust, and she essentially ignored the trust for the remainder of her life. Steps were taken for Bernice to receive the insurance proceeds which were designated for the trust, and she received these proceeds and kept them for her own use.

At the conclusion of probate of Samuel's estate in 1969, a first and final account was filed by Bernice and approved by the court. Petitioner had received notice of the hearing on this account and made no objections to the account. The final account showed receipts of approximately $90,000 and disbursements of approximately $160,000, thus showing a deficit of approximately $70,000. Two assets were shown to be on hand and designated for distribution as follows: "To Bernice S. Johnson—an undivided one-half interest in International Galleries as per will; [and] an undivided one-half interest in Exchange National Bank of Chicago Trust No. 4072." (The *res* of this latter land trust was real property located on Pine Grove Avenue in Chicago and we will refer to this trust as the Pine Grove Trust.)

Bernice died in 1977. She had remarried since Samuel's death, but her second husband died a few years before Bernice. Bernice's will left almost her entire estate to petitioner's brother, Harold. Bernice did not exercise any powers of appointment by her will. After the will was admitted to probate, petitioner filed the present claim against her estate.

In his claim, petitioner alleged that the trust established by Samuel had been ignored by Bernice, the individual trustee, from the time of Samuel's death until Bernice's death. As trustee, Bernice was accused of converting trust assets to her own use during her life and of commingling the proceeds received from these assets with her own assets. The total alleged value of these assets was more than $500,000.

There were basically four different assets allegedly converted by Bernice:

(1) the insurance proceeds designated for the trust;

(2) Samuel's one-half interest in the Pine Grove Trust which was distributed to Bernice and was allegedly part of the residue of Samuel's estate, and thus was property earmarked for the trust;

(3) one-half of all the assets in International Galleries representing Samuel's interest in International Galleries which was distributed to Bernice and allegedly should have been considered part of the residue of Samuel's estate and thus should have been earmarked by Bernice as trust property; and

(4) 100 shares of stock in Force Western, Inc., which stock represented the entire outstanding ownership interest in Force Western (petitioner alleged that Bernice had failed to include this asset as part of Samuel's estate and that this asset should have been part of the residue of Samuel's estate and earmarked for the trust).

Petitioner sought an accounting from Bernice's estate of all of the above assets or proceeds received from the sale of the above assets and an accounting of all the income generated by these assets and received by Bernice during her lifetime. Petitioner sought a determination that he was entitled to one-half the total value of these assets and income generated by these assets pursuant to the terms of the insurance trust established by Samuel. (Petitioner's brother, Harold, was entitled to the other one-half under the terms of the trust.)

Respondent filed a motion to dismiss petitioner's claim under section 48 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 48). Part of this motion sought dismissal of petitioner's claim under section 48(d), alleging that the prior order approving the final account of Samuel's estate barred petitioner from claiming any rights in the Pine Grove Trust, International Galleries, or the Force Western stock. This motion was denied. On appeal, respondent has renewed its allegation that petitioner's claim was barred.

Following denial of the motion, respondent filed its answer which denied all of the essential allegations of the claim and the case went to trial. We will set out here the evidence presented at trial concerning each of the assets to which petitioner asserted a claim.

*Insurance Proceeds*

The trial court determined that the trust created by Samuel was a valid trust and that the insurance proceeds designated for that trust should have been made a part of that trust by Bernice. The court ordered an accounting of these proceeds and awarded petitioner one-half the value of those proceeds ($18,750). These findings of the trial court are not disputed.

*Pine Grove Trust*

During Samuel's life, he owned a one-half beneficial interest in this land trust. Bernice owned the other one-half interest. It is undisputed that Samuel's one-half interest in this trust was subjected to probate and distributed to Bernice. It is also undisputed that Bernice later sold the entire beneficial interest in this trust for approximately $50,000. From the time of Samuel's death until the time the beneficial interest was sold in the early 1970's, Bernice collected approximately $19,000 in rents from the

property in this land trust. Additionally, there is no dispute that Bernice kept all of the proceeds from the sale and all of the rents for her own use.

Petitioner alleged that the final account of Samuel's estate showed that Samuel's interest was distributed to Bernice and that it had to be assumed that she had received the property under the residuary clause of Samuel's will, since no other clause bequeathed it to her, and thus she had received the property as the "acting trustee" of the insurance trust. From this, petitioner concluded he was entitled to an accounting of Samuel's interest in the Pine Grove Trust and an accounting of the income generated by this interest.

To rebut petitioner's argument, respondent presented the testimony of Bernice's attorney who had acted as her attorney when she was the administratrix of Samuel's estate. The attorney testified that he had allowed Bernice to take the Pine Grove interest personally as repayment of a loan made by Bernice to the estate in her capacity as administratrix. The attorney said that Bernice had personally paid off the $70,000 deficit shown by the final account. He said the value of Samuel's interest in the Pine Grove trust was approximately $25,000 at the time of probate of Samuel's estate, and he allowed Bernice to take Samuel's interest personally as partial repayment of the loan.

The attorney admitted on cross-examination that no records were kept to show a loan was made or repaid and that no court order was sought to approve this payment. The attorney also admitted that in a pretrial deposition he had said he had distributed this asset to Bernice as part of the residue of the estate and had said that at the time he had believed the insurance trust to be no longer in existence.

### International Galleries

It is undisputed that prior to Samuel's death an entity known as "International Galleries" was owned by Samuel and Bernice, each holding a one-half undivided interest. The business of this entity was to buy and sell works of art. The total value of this entity at the time the probate of Samuel's estate was concluded was approximately $180,000.

The dispute at trial concerned the nature of the entity. Petitioner argued that there were actually two entities that went by the name, "International Galleries." He alleged there was a corporation called "International Galleries, Inc.," which was a corporation on paper only, and that all of the assets were actually owned by a partnership called "International Galleries," with Samuel and Bernice as equal partners. Petitioner alleged that it was Samuel's interest in this partnership that was distributed to Bernice in the final account which said that Bernice received a one-half interest in "International Galleries as per will" and that Samuel's attempt to specifically bequeath to Bernice personally his interest in "International Galleries, Inc.," was ineffective to transfer his

interest in the partnership. According to petitioner, the interest was actually part of the residue of Samuel's estate, and it had to be presumed that Bernice received the interest as the "acting trustee" of the insurance trust.

In support of his contention, petitioner presented evidence which showed that Bernice, when she filed the inventory, the Federal estate tax return, and the estate income tax return for Samuel's estate, declared Samuel's interest in International Galleries as an interest in a partnership. Also, the lease on the property used as a place of business by International Galleries had been signed by Samuel and Bernice personally or as partners (it is unclear in the record) and not as representatives of any corporation.

To rebut petitioner's contention, respondent presented evidence to show that, during Samuel's life, the corporation was officially registered with the Secretary of State; that all transactions other than the lease transaction were performed in the corporate name; that all tax forms were filed in the corporate name; that all financial statements were kept in the corporate name; and that there existed no written agreement of partnership. Respondent also showed that prior to his death Samuel established a Totten Trust with himself as trustee and Bernice as beneficiary, and the *res* of this trust was Samuel's stock in International Galleries, Inc. (Respondent contended that the inclusion of International Galleries in the final account was simply a safety measure to assure that if Bernice had not taken all of Samuel's interest by way of the Totten Trust, any remaining interest passed to Bernice under the specific bequest in Samuel's will.)

Finally the evidence showed that petitioner himself purchased International Galleries from Bernice in early 1970 and Bernice represented herself as a sole proprietor.

## Force Western Stock

The certificate for the 100 shares of stock was in Bernice's name as sole owner at the time of Samuel's death. The stock was not included as an asset in Samuel's probate estate. Petitioner contended that Bernice had been a mere nominee of this stock and Samuel had been the actual beneficial owner of the shares in Force Western, Inc. Petitioner contended that the shares in the corporation should have been deemed part of the residue of Samuel's estate and Bernice should have been deemed to have held these shares as trustee of the trust. Bernice sold the stock in 1970 for approximately $277,000 and kept the proceeds for her own use.

Force Western, Inc., was originally established in 1946 under the name William A. Force Western Sales, Inc. It was renamed in 1957. When the corporation was established, William Force contributed the capital necessary to start the company, and Samuel's contribution consisted of his

agreement to head the company and manage it. Though 1000 shares of common stock were initially authorized, only 100 shares of stock were distributed to shareholders. Fifty of those shares were issued to Jane Force, William's wife, and 50 to Bernice.

In 1949, Jane Force's 50 shares were transferred to William A. Force, Inc., another corporation solely owned by William Force. In 1957, all outstanding shares of stock were retired and 100 shares were issued to Bernice by means of a new certificate. Thereafter, William Force was not involved with the company. Samuel ran the company until his death and Bernice was listed as a director. Samuel never filed a Federal gift tax return concerning these 100 shares.

Following Samuel's death and subsequent to the filing of the estate tax return, the IRS determined that the 100 shares of stock in Bernice's name should have been included as an asset subject to Federal estate taxes from Samuel's estate. Bernice, through her attorney, objected to this inclusion. After a period of negotiations, the stock was included as a taxable asset, though Bernice's attorney still refused to concede it was an asset subject to tax. The compromise reached by Bernice's attorney and the IRS was to allow the estate to not include for tax purposes other assets the IRS alleged should have been included and thus reduce the effect of including the stock. When Bernice sold the stock in 1970, she claimed as her basis for the purpose of the Federal tax on capital gains the value of the stock at Samuel's death.

Much of the testimony of William Force was excluded by the trial court as being irrelevant, but an offer of proof was made in which Force testified as follows.

In 1946, when Bernice was issued the 50 shares, none of the consideration for those shares came from Bernice. All of the consideration came from Samuel in the form of his promise to head and manage the company.

In 1957, Force's personal corporation owned the 50 shares originally issued to Jane Force. In 1957, Force sold these shares to Samuel. Samuel paid all of the consideration for these shares; however, the certificate for these shares was transferred to Bernice at Samuel's direction. At approximately the same time, Bernice, who was now holding the certificates representing all 100 shares of outstanding stock, returned those certificates to the corporation. Samuel then had the corporation issue a new certificate representing the 100 shares to Bernice. Bernice paid no consideration for these shares.

At the conclusion of the trial, the trial court granted petitioner's claim as to the insurance proceeds, but denied his claim as to the other assets. In so ruling, the court held that petitioner's allegations had not been "substantiated by the evidence."

Opinion

I

There is no dispute in this case that Bernice kept the three assets, the Pine Grove Trust, International Galleries, and the Force Western Stock or that she sold those assets and used the proceeds from the sale for herself. The dispute concerns whether the three assets should have been made part of Samuel's insurance trust. If they should have been part of the trust, Bernice, as individual trustee, breached her fiduciary duty by keeping those assets for herself, and petitioner should have been held entitled to an accounting for those assets.

Whether the three assets should have been part of the trust depends on whether the three assets should have been considered part of the residue of Samuel's estate and distributed to the trust under the residuary clause of Samuel's will. Before discussing this issue, we must initially address two preliminary issues. First, even assuming that the three assets should have been part of the residue of Samuel's estate, and thus distributable to the trust, was petitioner barred by the order approving the final account of Samuel's estate from asserting that the assets were part of the residue or part of the trust? Second, even assuming the assets were trust assets, was petitioner entitled to an accounting of the income generated by these assets, which income Bernice received during her life?

*Final Account as Bar*

Respondent asserts that petitioner's claim is essentially a claim challenging the final account of Samuel's estate. Petitioner, in 1969, received notice of the hearing on this final account and made no objections to it. Generally, in the absence of fraud, accident, or mistake, a court's approval of a final account makes that account binding on all persons who had notice of that account. (Probate Act of 1975, section 24—2 (Ill. Rev. Stat. 1979, ch. 110½, par. 24—2) (the section in effect in 1969 when the final account was filed was substantially the same as the present law (see Ill. Rev. Stat. 1973, ch. 3, par. 290)).) Absent fraud, accident, or mistake, persons who had notice cannot subject the order approving the final account to collateral attack. *In re Estate of Connors* (1959), 23 Ill. App. 2d 240, 161 N.E.2d 871.

We initially note that petitioner's claim to Samuel's interests in the Pine Grove Trust and International Galleries does not constitute a collateral attack on the final account. The final account shows that Bernice received Samuel's interest in "International Galleries as per will," and received Samuel's interest in the Pine Grove Trust. The controversy here concerns whether Bernice received the Pine Grove Trust interest under the residuary clause of Samuel's will, and thus as "acting trustee" of

the insurance trust, or received it in her individual capacity, and whether Bernice received Samuel's interest in International Galleries as an interest in a corporation, and thus received it under the specific bequest clause of the will, or received Samuel's interest in International Galleries as an interest in a partnership, and thus received it as "acting trustee" under the residuary clause of Samuel's will. None of these issues was determined during the probate of Samuel's estate, and the position taken by petitioner is consistent with the information contained in the final account and does not constitute an attack upon that account.

■■ As to the Force Western Stock, when Bernice was acting as administratrix of Samuel's estate, she was also the individual and only "acting trustee" of the trust. As trustee, she had a duty to assure that any assets rightfully belonging to the trust became a part of the trust. (*Holyoke v. Continental Illinois National Bank & Trust Co.* (1952), 346 Ill. App. 284, 104 N.E.2d 838.) As trustee, it was incumbent upon her to challenge the final account if she knew or should have known that the Force Western Stock constituted part of the residue of Samuel's estate and thus part of the trust. Her executor cannot now assert the binding effect of the order approving the final account obtained by Bernice in her capacity as administratrix to escape accountability for Bernice's breach of her fiduciary duty as trustee in failing to challenge the final account or in failing to hold the stock as trust property if it should have been included as part of the residue of Samuel's estate. See *Johnson v. Central Standard Life Insurance Co.* (1968), 102 Ill. App. 2d 15, 243 N.E.2d 376.

Therefore, we conclude that petitioner's claim is not barred by the order approving the final account.

*Claim to Income*
■■ Assuming that petitioner was entitled to an accounting of the three assets, was he also entitled to an accounting of the income generated by those assets, which income Bernice received during her life while she possessed those assets? Under the terms of the trust, Bernice, as individual trustee, was specifically prohibited from exercising any power concerning the distribution of income or principal. Thus, her distribution of the income to herself constituted a breach of the terms of the trust if the assets were part of the trust principal. Nevertheless, we believe that petitioner was not entitled to an accounting of the income.

Under the terms of the trust, the corporate trustee was ordered to distribute all income to Bernice during her life. The corporate trustee had no discretion in this matter. Thus, if all had gone according to plan, Bernice would have received the income anyway. Under the terms of the trust, petitioner, as a beneficiary of the remainder, essentially had no

rights to the income. Hence, Bernice's distribution of the income to herself caused no injury to petitioner, and thus we conclude petitioner was not entitled to an accounting of the income.

## II

We turn now to a discussion of whether any of the assets, the Pine Grove Trust, International Galleries, or the Force Western Stock, were part of the residue of Samuel's estate and thus part of the trust principal.

### Pine Grove Trust

Petitioner maintains that the trial court's decision denying him an accounting of Samuel's interest in the Pine Grove Trust is against the manifest weight of the evidence. We agree.

It is conceded by respondent that the Pine Grove Trust interest was an asset in Samuel's estate. Under the terms of Samuel's will, the only apparent manner in which Bernice could have received this interest was as "acting trustee" of the trust under the residuary clause. On the face of the final account, this asset was distributed to Bernice. To be consistent with the will, it must be assumed that this asset was distributed to Bernice as "acting trustee." Respondent maintains that this asset was distributed to Bernice as repayment of a loan in her capacity as administratrix. No records were kept of such a loan being made or repaid. No court order was sought to approve this payment.

■■ An administratrix or a trustee is a fiduciary and is bound to keep clear, distinct, and accurate records of all dealings with estate or trust assets put in her possession, and her failure to do so creates a strong presumption against the propriety of any such dealings (*Nonnast v. Northern Trust Co.* (1940), 374 Ill. 248, 29 N.E.2d 251), or, in this case, the existence of any such dealings.

We must assume from the terms of Samuel's will and the face of the final account that Bernice received the Pine Grove Trust interest as trustee of the trust and that no loan was actually made or repaid. It was incumbent upon respondent to overcome this presumption. We believe that Bernice's attorney's testimony concerning the loan was insufficient to do so.

The attorney testified that the loan was made and repaid, and admitted that no records for this loan or repayment were made. On cross-examination, the attorney admitted to having said in a pretrial deposition that he had distributed the Pine Grove Trust interest as part of the residue and that at the time he had believed the insurance trust created by Samuel was no longer in existence. Whether the attorney's testimony concerning the loan being made and repaid was itself sufficient to overcome the presumption that Bernice had received the interest as

trustee need not concern us. Because of the inconsistency created in the attorney's testimony by the statements in his pretrial deposition, we believe that respondent failed to overcome the presumption that Bernice received the interest as the trustee of the trust.

Accordingly, we hold that the Pine Grove Trust interest should have been deemed part of the trust principal. On remand, the trial court is directed to order an accounting for this asset.

### International Galleries

Petitioner asserts that Samuel's interest in International Galleries was actually a partnership interest and that the corporation known as "International Galleries, Inc.," was merely a corporation on paper. Petitioner contends that Samuel's attempted transfer of his interest in the corporation to Bernice personally by means of the Totten Trust or by means of the specific bequest clause in his will was insufficient to transfer his interest in the alleged partnership to Bernice personally. Petitioner contends that the partnership actually owned all of the assets of International Galleries, and Bernice received Samuel's one-half interest in these assets as acting trustee of the trust. Petitioner maintains that the trial court's failure to order an accounting of Samuel's interest in International Galleries is against the manifest weight of the evidence. We disagree.

Petitioner's argument that a partnership existed depends primarily on Bernice's treating the interest she received from Samuel as a partnership interest while she was administratrix of Samuel's estate. However, petitioner was required to establish the existence of a partnership at the time of Samuel's death and before his death. Bernice's actions after Samuel's death could not create a partnership. Unless the partnership existed at the time of Samuel's death, petitioner's position could not be maintained.

Though the manner in which Bernice treated the interest after Samuel's death may have been probative as to the issue of the nature of the interest before Samuel's death, there is a dearth of evidence to show that the interest was treated as a partnership interest before Samuel's death. Prior to Samuel's death, all transactions except for the lease transaction, were carried out in the name of the corporation. All tax returns were filed in the name of the corporation. There was no evidence to show even the mention of a partnership agreement before Samuel's death. Based on the evidence presented, it is clear that the trial court's decision that International Galleries was only a corporation is not against the manifest weight of the evidence. Since it was solely a corporation, Bernice received Samuel's entire interest in International Galleries by means of the Totten Trust or the specific bequest clause in Samuel's will, and she received it in her individual capacity and not as acting trustee of the trust.

Accordingly, we conclude that petitioner was not entitled to an accounting of Samuel's interest in International Galleries.

### Force Western Stock

■■ At trial, petitioner contended that Bernice had been a mere nominee of the 100 shares of Force Western stock and Samuel had been the actual beneficial owner. Petitioner argued, correctly, that if Bernice had been a mere nominee and Samuel had been the actual beneficial owner of the shares at the time of his death, then Samuel's interest in the shares should have been included as an asset in his estate and as part of the residue of his estate distributable to the trust. See *Head v. Wood* (1959), 20 Ill. App. 2d 97, 155 N.E.2d 348; *Nolan v. American Telephone & Telegraph Co.* (1945), 326 Ill. App. 328, 61 N.E.2d 876.

Despite petitioner's correct proposition of law, respondent argued throughout the trial that Bernice's possession of the certificate in her name conclusively established Bernice's absolute ownership of the 100 shares of stock. As a result, respondent objected to all of petitioner's attempts to present evidence contesting Bernice's ownership. Though petitioner was allowed to present some evidence on the issue of the true owner of the shares, it is apparent that the trial court accepted respondent's argument when it ruled that the bulk of Force's testimony concerning Samuel's having been the only person who provided consideration for the shares was irrelevant and inadmissible.

On appeal, petitioner has alleged that it was error to exclude Force's testimony. In its answering brief, respondent has apparently conceded the error and has abandoned the position it took at trial. Instead, respondent argues that Samuel's transfer of the certificate to Bernice in 1957 created a rebuttable presumption that Samuel intended to make a gift to Bernice, and all of petitioner's evidence, including the excluded evidence, was insufficient as a matter of law to overcome the presumption.

■■ When a husband causes stock to be delivered to his wife in his wife's name and the husband has paid the consideration for that stock, a rebuttable presumption of fact arises that a gift is intended. (See *Peck v. Peck* (1959), 16 Ill. 2d 268, 157 N.E.2d 249; *In re Marriage of Atkinson* (1980), 82 Ill. App. 3d 617, 402 N.E.2d 831.) In the present case, petitioner, to succeed in his allegation that Bernice was a mere nominee, was required to present clear and convincing evidence to overcome this presumption of gift. (*Nolan v. American Telephone & Telegraph Co.* (1945), 326 Ill. App. 328, 61 N.E.2d 876.) Nevertheless, on review, we are not being asked to determine whether the trial court's decision that the presumption of gift was not overcome is against the manifest weight of the evidence. It is apparent that the trial court did not determine this issue.

Its decision was based on respondent's argument that the certificate was conclusive proof of ownership. What we are being asked to do is to determine that if the trial court had considered the issues and the evidence properly, then the only judgment it could have entered would have been one for respondent. (See *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) In doing so, we must consider all of the evidence, and reasonable inferences arising from that evidence, in a light most favorable to petitioner.

■■ Considering the evidence presented in this aspect, including petitioner's offer of proof, we find that the evidence shows that Samuel paid all of the consideration for the 100 shares of stock. It shows that Samuel headed and managed the corporation during his life, though Bernice was the only person allegedly owning stock in the corporation. When Samuel made the alleged gift, he did not file a Federal gift tax return as required by law. (See 26 U.S.C. §6019 (1976).) When Samuel died, the IRS determined that the 100 shares of stock were subject to an estate tax. Generally, under Federal estate tax law, if a decedent, at the time of his death, is able to exercise any degree of dominion and control over property which he has allegedly transferred by gift during his life, then the value of that property is included in his gross estate and subject to a tax. (See 26 U.S.C. §2036 (1976); *Estate of Sulovich v. Commissioner of Internal Revenue* (6th Cir. 1978), 587 F.2d 845.) Though the IRS's determination did not conclusively prove that Samuel had failed, under our law of gift, to make a gift to Bernice in 1957, it was at least relevant evidence tending to show there was no gift, and that Bernice was merely a nominee, since our law of gift requires that the donor relinquish all present and future dominion and control over property to make the transfer of the property an effective gift inter vivos. See *Pocius v. Fleck* (1958), 13 Ill. 2d 420, 150 N.E.2d 106; *Suchy v. Hajicek* (1936), 364 Ill. 502, 4 N.E.2d 836; *Christian v. Christian* (1979), 69 Ill. App. 3d 450, 387 N.E.2d 1254.

The evidence also shows that Bernice was listed as a director of Force Western, Inc., but no evidence was presented to show whether Bernice actually exercised any powers of a director during Samuel's life. Also, there was no evidence presented to show that Bernice ever received any dividends or profits from Force Western.

From the evidence presented, we cannot conclude as a matter of law that petitioner failed to overcome the presumption of gift. However, we also cannot conclude as a matter of law that Bernice was a mere nominee and that Samuel was the actual beneficial owner of the shares of stock. Though there was no evidence to show that Bernice exercised any powers as a stockholder during Samuel's life or received any dividends or profits

from Force Western, there was also no evidence to show that she did not. Though the IRS's determination that the stock was subject to an estate tax was evidence that no gift was made and that Bernice was a mere nominee, it was contended by Bernice's attorney that the IRS's determination was incorrect and the attorney had accepted the determination on the estate's behalf as part of a compromise which allowed Samuel's estate to not include other assets the IRS had contended were also subject to a tax.

In essence, we believe that the evidence presented merely created a question of fact as to whether the presumption of gift had been overcome and as to whether Bernice was a mere nominee of the shares of stock and Samuel was the actual beneficial owner. Since the trial court did not consider these issues or all of the evidence presented on these issues, we believe that the proper action in this case is to reverse the judgment entered for respondent as far as it held that petitioner was not entitled to an accounting of Samuel's interest in the Force Western stock. Rather than remand for a new trial, since this was a bench trial, we simply remand with directions to the trial court to reconsider all of the evidence presented, including the evidence presented in petitioner's offer of proof, and determine whether Bernice had been a mere nominee of the shares of stock and whether Samuel was the actual beneficial owner of the stock at the time of his death. If the trial court determines this issue in petitioner's favor, it is directed to order the accounting requested by petitioner. If the trial court determines otherwise, it is directed to enter judgment for respondent.

*Conclusion*

To summarize our decision in this case, we note that we have held the following:

(1) the judgment entered for respondent as far as it denied petitioner's request for an accounting of Samuel's interest in the Pine Grove Trust is reversed, and on remand the trial court is directed to order an accounting of this interest;

(2) the judgment entered for respondent as far as it denied petitioner's request for an accounting of Samuel's interest in International Galleries or of Samuel's interest in any assets belonging to International Galleries is affirmed;

(3) the judgment entered for respondent as far as it denied petitioner's request for an accounting of Samuel's interest in the Force Western stock is reversed, and on remand the trial court is directed to reconsider all of the evidence, including petitioner's offer of proof, and enter judgment accordingly; and

(4) on remand, petitioner will not be entitled to an accounting for any of the income generated by the assets during Bernice's life.

Accordingly, for the reasons noted, we affirm the judgment in part, reverse in part, and remand with directions.

Affirmed in part, reversed in part, and remanded.

ROMITI, P. J., and JIGANTI, J., concur.