*In re* MARRIAGE OF JANICE L. AGAZIM, Petitioner-Appellee and Cross-Appellant, and JOHN A. AGAZIM, Respondent-Appellant and Cross-Appellee.

Second District   No. 2—85—0724

Opinion filed September 26, 1986.

Miles N. Beermann and Howard A. London, both of Beermann, Swerdlove, Woloshin, Barezky & Berkson, of Chicago, for appellant.

Irvin J. Jacobson, of Griffith & Jacobson, and Paul J. Bargiel, both of Chicago, and Roger A. White, of Lake Bluff, for appellee.

JUSTICE HOPF delivered the opinion of the court:

Petitioner, Janice Agazim, filed a petition for dissolution of marriage. After an evidentiary hearing, a judgment for dissolution of marriage was entered on May 14, 1985. Respondent, John Agazim, appeals from the final provisions of that judgment. In his appeal, he contends: (1) that the trial court erred in classifying petitioner's half-interest in four buildings of an apartment complex, known as Whitehall Manor, as a nonmarital gift; (2) that the trial court abused its discretion in apportioning the marital property; and (3) that the trial court erred in setting child-support payments at an excessive amount. Petitioner cross-appeals, contending that the trial court acted improperly in ordering the immediate disposition of the family home.

Petitioner, Janice Agazim, and respondent, John Agazim, were married on May 18, 1974. At the time of the dissolution proceeding, John was 34 and Janice was 33; both parties were in good health. Two children were born of the marriage, Erik and Andrew. At the time of the parties' divorce, the ages of the children were eight and five, respectively. By agreement of the parties, Janice was awarded custody of the children. John was ordered to pay child support of $700 per month. Neither party was to receive maintenance.

During the parties' marriage, Janice received a half-interest in four buildings of an apartment complex known as Whitehall Manor (these four buildings hereinafter referred to as Whitehall Manor). The trial court awarded this interest to Janice, finding that it constituted a nonmarital gift to Janice from her father. This interest was valued at $586,555, later revised to $648,463.

John, a salesman and manufacturer's representative, had done business through several corporations during the period of the parties' marriage. According to John, most of these corporations were either defunct or out of business at the time of the divorce proceeding. John was awarded all of his business interests, on which the court found it could place no value due to insufficient evidence. Additionally, he was awarded his interest in a gold mine, valued at $3,000.

During the parties' marriage, John and Janice used money from the sale of their first home, which they had bought from John's parents, and a loan to build a family home on a lot which Janice's father had given them. At the time of the parties' divorce, the fair market value of the home was $340,000 with an existing first mortgage lien of $85,314. The court ordered the immediate sale of the home with the proceeds, after payment of the mortgage, to be divided equally between John and Janice. Alternatively, the court al-

lowed Janice the option of purchasing John's interest in the residence for $120,000 to be paid within 90 days of entry of the dissolution judgment. Janice was awarded all the furniture and furnishings within the marital home, valued at $49,000.

John was ordered to pay all his business debts and the parties' marital debts. All of the debts totaled $112,460. Both parties were ordered to pay their own attorney fees and court costs.

In view of our disposition of this case, it is necessary to address only the first issue, that is, whether the trial court erred in classifying Janice's one-half interest in Whitehall Manor as a nonmarital gift. John contends that the trial court erred in finding that Janice acquired her half-interest in Whitehall Manor, an apartment complex, by gift from her father, Mr. Serafine, rather than by sale. John argues that the Whitehall Manor transaction did not satisfy any of the elements of a gift and, therefore, Janice's $648,463 interest in the apartment complex should have been considered part of the marital estate to be distributed between the parties. John asks this court to reverse the property division and remand the case for redistribution of all marital assets, including Whitehall Manor.

■■ ■ Section 503 of the Illinois Marriage and Dissolution of Marriage Act (the Divorce Act) governs the classification of property. (Ill. Rev. Stat. 1983, ch. 40, par. 503.) The Divorce Act creates a rebuttable presumption that all property acquired during the marriage is marital. (*Hofmann v. Hofmann* (1983), 94 Ill. 2d 205, 216, 446 N.E.2d 499.) The party seeking to rebut the presumption bears the burden of presenting evidence to show that the property was acquired by an excepted method enumerated in section 503(a) of the Divorce Act, such as a gift. (*In re Marriage of Cook* (1983), 117 Ill. App. 3d 844, 849, 453 N.E.2d 1357.) Additionally, the presumption exists that a transfer from a parent to a child constitutes a gift and may be overcome only by clear and convincing evidence to the contrary. (*In re Marriage of Rosen* (1984), 126 Ill. App. 3d 766, 772, 467 N.E.2d 962.) Here, as in *Rosen*, the transaction in question was subject to the preceding and conflicting presumptions. Thus, the presumptions effectively cancelled each other and left the trial court free to resolve the issue of whether the property acquired by the transaction was nonmarital or marital on the facts. See 126 Ill. App. 3d 766, 772, 467 N.E.2d 962.

■ The facts belie the trial court's conclusion that the Whitehall Manor transaction constituted a gift. A gift is a voluntary, gratuitous transfer of property by one to another where the donor evidences an intent to make such a gift and absolutely and irrevocably

delivers the property to the donee. (*In re Marriage of Cook* (1983), 117 Ill. App. 3d 844, 849, 453 N.E.2d 1357.) Here, the transfer was not gratuitous. Janice contracted through the articles of agreement drawn up to carry out the transfer of Whitehall Manor to pay substantial consideration for her interest. The agreement specified the purchase price Janice and her sister were to pay their father for the four buildings comprising Whitehall Manor. That price reflected the fair market value of the property. Additionally, under the terms of the agreement the sisters were obligated to purchase and maintain insurance on the property, to pay for all necessary repairs, and to pay all real estate taxes on the property.

Janice maintains there was no consideration because she did not actually put forth funds towards the purchase price, the insurance, or the real estate taxes. Further, Janice argues that her father's statement that she and her sister would not be obligated to make any payments supports her position that the transaction constituted not a sale but a gift. Despite these contentions, it is apparent that the sisters were responsible for the payments, regardless of Mr. Serafine's verbal representations to them. Mr. Serafine, as manager of Whitehall Manor under a manager's agreement which the sisters signed at the same time they signed the articles of agreement, collected the rental proceeds from the apartments and applied them to the purchase price and any other obligation which needed attention. These rental proceeds belonged to the sisters and would have been applied by them to their financial obligations created under the articles of agreement, including monthly payment of the principal and interest, except for the fact that their father did this task, as manager, for them. Although it is contended that the sisters did not have to pay anything for the property, they were paying for the property out of the rental proceeds.

Secondly, the record creates doubt concerning whether Serafine actually intended to make a gift of the subject matter, *i.e.*, the four apartment buildings. What he intended to give his daughters was the net income derived from Whitehall Manor. Testimony by Serafine showed that when he told Janice and her sister on Christmas Eve, 1976, that he wanted to make a "gift" of Whitehall Manor, he explained to them that he was hoping the buildings would generate for each of them $5,000 to $6,000 a year in income. Both Serafine's testimony and that of his attorney, Charles Marino, revealed that Serafine did not definitively intend either to deliver the deed to the buildings to his daughters or to relinquish control of them.

Although Serafine allegedly made a gift of the buildings to his

daughters, he told them that they could not assign, sell, or transfer the buildings. Marino testified that at his initial meeting with Serafine regarding the conveyance, Serafine had questioned Marino regarding whether, if Serafine made a gift of the buildings to his daughters, they could sell or convey the property. Serafine made it clear that he did not want the apartment complex to be sold or conveyed in pieces. When Marino later explained to Serafine that it was impossible to make a gift with these restrictions, Serafine responded that he did not want to go through with the Whitehall Manor transaction unless the restrictions attached.

As a result, Marino suggested conveying the property by the articles of agreement and a management contract. The purpose of the management agreement, as testified to by Serafine, was to provide him with "complete control of the buildings." That Serafine never intended to relinquish control of the buildings at the time the alleged "gift" was given to his daughters or at any definite time in the future was evident from Serafine's testimony. On cross-examination he admitted that, irregardless of the terms of purchase in the articles of agreement, he would not give his daughters a deed to the property unless he saw "fit to do so."

Additionally, Marino testified that subsequent to his first meeting with Serafine regarding the transfer of Whitehall Manor, Marino had concluded that putting the type of restrictions Serafine wanted on a "gift" would be very hazardous, as a high probability existed that the gift could not be enforced. Marino told Serafine that it was common to include restrictions of the nature requested by Serafine in a sale where property was transferred under articles of agreement for a trustee's deed. Marino subsequently prepared such an agreement in which Serafine is referred to as the "seller" of the property and the daughters are referred to as the "purchasers." Various paragraphs within the agreement establish that the daughters were the purchasers of Whitehall Manor. For example, the agreement sets forth that Janice and her sister were to pay the following sums of money to acquire their interest in Whitehall Manor:

> "(a) $1,421,000 plus 8-1/4% annual interest on the unpaid balance, at the rate of $14,678.33 per month, for a period of 120 months, and
>
> (b) Additional monthly interest equal to two percent (2%) of the property's gross revenues for the preceding month."

Additionally, the agreement provided that the sisters were to purchase and maintain insurance on the property, as well as insurance protecting the seller, during the term of the agreement; to pay for

all necessary repairs to the property during the term of the agreement; and to pay all real estate taxes on the property, beginning with the year 1977. Considering just the four corners of this document, it represents a contract for the sale of property. Regardless of what Serafine's intention was on Christmas Eve when he announced to his daughters that he wanted to give them Whitehall Manor, the transaction that occurred in January 1977, via the articles of agreement, did not constitute a gift.

Nevertheless, even if this court were to accept Janice's argument that we should look to the substance rather than the form of the Whitehall transaction, Janice still would not prevail. The substance of the transaction was that Serafine only intended to provide a gift of income from the property and not the property itself. As Marino related on cross-examination, Serafine told him that he would only give the daughters a deed to Whitehall Manor when he felt they were ready. Clearly, Marino's testimony and Serafine's testimony demonstrated that it was questionable whether Serafine ever intended to deliver or relinquish control of the subject matter of the gift. All Serafine was endeavoring to give his daughters at the time of the transaction was the income from the *res*.

Further support for John's argument that the buildings were not gifted to the daughters is represented by the fact that no 1977 gift tax return was filed by Serafine. In fact, as John points out, both Serafine and Janice treated the transaction as a "sale" on their 1977 to 1982 Federal income tax returns. Additionally, testimony by John Sartoris, a certified public accountant, represented that the transaction would be treated by the Internal Revenue Service as a sale for Federal income tax purposes. Although the determination of the IRS would not conclusively prove that the transaction constituted a sale rather than a gift, it was relevant evidence tending to show there was no gift to Janice. See *In re Estate of Winston* (1981), 99 Ill. App. 3d 278, 291, 425 N.E.2d 973.

Finally, Janice directs this court's attention to the fact that the current Divorce Act was not in effect at the time her father made a gift of the apartment buildings in January 1977. According to Janice, under the old divorce law it would be irrelevant whether the Whitehall Manor transaction was viewed as a gift or a sale since the separate property of each spouse was awarded to the spouse having legal title. It is not clear by this explanation whether Janice is implying that this court should decide the nature of the property in question based on prior law or by concluding that in the interest of fairness the property should be characterized as "nonmarital." Such

an implication fails to take into consideration that the facts of this case, and the law, favor John's position. The primary legislative objective of section 503 of the Divorce Act was to incorporate the partnership theory of marriage (*In re Marriage of Rogers* (1981), 85 Ill. 2d 217, 222, 422 N.E.2d 635), and "to create a system of property division upon dissolution of marriage that is more equitable than that which previously existed in this State" (*Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 576, 376 N.E.2d 1382). To try to separate the property in question from the marital estate, as Janice purports to do here by claiming it was a gift, circumvents the law and violates public policy.

A trial court's classification of property should not be disturbed unless contrary to the manifest weight of evidence. (*In re Marriage of Rosen* (1984), 126 Ill. App. 3d 766, 773, 467 N.E.2d 962.) Here, the evidence demonstrates that Serafine did not make a gift of Whitehall Manor and that the trial court erred in classifying the apartment complex as nonmarital property. By reclassifying Whitehall Manor as marital property, we realize the entire case must be remanded for redetermination of an equitable distribution of the parties' property. See *In re Marriage of Brown* (1982), 110 Ill. App. 3d 782, 787, 443 N.E.2d 11.

Consequently, we reverse the property division and remand the cause for a redetermination of the parties' assets, treating Whitehall Manor as marital property. Additionally, upon redistribution of the property, the issues of child support and sale of the marital home should be reconsidered.

Accordingly, the judgment of the circuit court of Lake County is reversed and the cause remanded in accordance with our directions.

Reversed and remanded with directions.

SCHNAKE and STROUSE, JJ., concur.