*In re* MARRIAGE OF ROMA WALKER, Petitioner-Appellee, and JACK F. WALKER, Respondent-Appellant.

Fourth District   No. 4—90—0162

Opinion filed September 28, 1990.

William B. McNamara, of Groppi, McNamara & Underhill, of Danville, for appellant.

Arthur M. Lerner, of Lerner & Kirchner, of Champaign, for appellee.

JUSTICE GREEN delivered the opinion of the court:

This case concerns the question of whether 235 shares of stock of

a closely held corporation are marital or nonmarital property under the provisions of section 503 of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1987, ch. 40, par. 503). Both a father and his son worked for the corporation during the son's marriage, and the stock was sold by the father to the son at a price which constituted a very substantial bargain. In a dissolution proceeding between the son and his wife, the circuit court ruled the foregoing shares were marital property. We agree and affirm the judgment on appeal.

On June 27, 1988, petitioner Roma Walker filed a petition in the circuit court of Vermilion County for the dissolution of her marriage to respondent Jack Walker. A judgment of dissolution was entered August 19, 1988, and on December 22, 1989, a judgment was entered on certain ancillary matters including the distribution of property. The court determined that the marital assets should be divided equally and awarded marital property valued at approximately $360,500 to each party. The 235 shares of stock in the previously described family-held close corporation which were ruled to be marital property were awarded to respondent, and petitioner was awarded other marital property to effectuate the even distribution of marital property. Respondent has appealed, contesting only the classification of those shares of stock.

The undisputed evidence presented at the hearing indicated: (1) at the time of the dissolution, the parties had been married 35 years; (2) respondent was an employee of the General Appliance Company for 30 years; (3) the company was incorporated in 1973; (4) respondent's father contributed the entire capitalization for the corporation, which issued 500 shares of stock; (5) the father gave respondent 100 shares of stock at that time and retained 400 shares; (6) on February 1, 1985, the respondent's father transferred the 235 shares of stock in question from himself to respondent, and respondent paid the father $47,000; (7) no gift-tax return was filed in regard to this transfer; and (8) prior to the 1985 transfer of 235 shares, respondent purchased additional shares of stock from his sisters, in December 1975 and December 1977, at $200 per share.

Attorney William Kesler testified that (1) he has been the attorney for the General Appliance Company since it was incorporated in 1973; (2) at the time of the transfer of the 235 shares to respondent, he advised respondent and his father that, because the stock's fair market value was more than $47,000, the transfer would constitute a taxable gift; (3) he estimated the book value of the stock was $500 per share, and therefore, the transaction resulted in a gift of approxi-

mately $300 per share; (4) he indicated that another way of looking at the transaction was that it was a purchase of 94 shares at the $500 per share, and a gift of the remaining shares; and (5) he informed respondent's father that he was obligated to file a gift-tax return, but because the amount of the gift tax would be less than the exclusion allowed, no gift tax would be due.

■■ Section 503 of the Act creates a rebuttable presumption that all property acquired during the marriage is marital. (*Hofmann v. Hofmann* (1983), 94 Ill. 2d 205, 216, 446 N.E.2d 499, 502.) The party seeking to rebut the presumption has the burden of presenting evidence to show that the property was acquired by an excepted method enumerated in section 503(a), such as a gift.

Respondent argues, however, that a presumption exists that a transfer from a parent to a child constitutes a gift and may be overcome only by clear and convincing evidence to the contrary. (*In re Marriage of Agazim* (1986), 147 Ill. App. 3d 646, 648, 498 N.E.2d 742, 744.) Respondent maintains that if no money had changed hands, the transfer of the stock would be presumed to be a gift, and would be considered nonmarital property. He argues that at least a portion of the 235 shares of stock he acquired in 1985 should be treated as nonmarital property, because since he paid less than the fair market value of the stock, it was a gift from his father. He notes the property transferred had a value of $117,500, and he paid $47,000. He concludes, therefore, that the court should have found a gift of $70,500, and that amount should be treated as nonmarital property.

Here, as in *Agazim*, the transaction was subject to the two conflicting presumptions. Thus, "the presumptions effectively cancelled each other and left the trial court free to resolve the issue of whether the property acquired by the transaction was nonmarital or marital on the facts." *Agazim*, 147 Ill. App. 3d at 648, 498 N.E.2d at 744; *In re Marriage of Rosen* (1984), 126 Ill. App. 3d 766, 772, 467 N.E.2d 962, 966.

■ The trial court rejected respondent's argument that the transfer was intended as a gift. The court noted the father did not file a gift-tax return, and although that fact, in itself, is not conclusive (*Agazim*, 147 Ill. App. 3d at 651, 498 N.E.2d at 746), it supports the theory the transfer was not intended as a gift. The court also noted that a contract for the sale of stock was signed between respondent and his father, and that the evidence indicated the father wished his son to have the stock for the price stated in the contract. The court indicated that the contract stood as representative of the intent of the parties as a sale, and, if the parties had intended a portion of that

transaction to be a gift, they could have so stated and filed a gift-tax return. The court concluded the transfer was a sale for less than adequate consideration and could be characterized as a "bargain." The court noted that the parties had undoubtedly acquired other "bargains" during their marriage, but that fact did not necessarily transform the other transactions into gifts.

The trial court could properly have concluded, and its comments indicate it did conclude, respondent and his father did not follow attorney William Kesler's suggestion they treat the transaction concerning the transfer of the 235 shares as a sale of 94 shares for full value and a gift of the remainder of the shares. Had they done so, we would agree that the 94 shares would likely be marital property and the other shares nonmarital property. However, the evidence gives no indication the transaction was treated in this manner. Rather, the record indicates the transfer of each of the 235 shares was to be treated in the same manner. If that is so, then the sale of each was at a bargain price. Respondent would have us treat each share as partially representing a sale to the extent of $200 of the total sales price, with the balance of the value of that share constituting a gift.

■ Respondent's theory of the transfer of each share constituting partly an arm's length sale and partly a gift runs afoul of the "unitary property" principle (Ill. Ann. Stat., ch. 40, par. 503(a), Supplement to Historical and Practice Notes, at 60 (Smith-Hurd Supp. 1990)) arising from *Bentley v. Bentley* (1981), 84 Ill. 2d 97, 417 N.E.2d 1309, and *In re Marriage of Komnick* (1981), 84 Ill. 2d 89, 417 N.E.2d 1305. In those cases, the supreme court held the appreciation in the value of nonmarital property occurring during the marriage of the parties was not marital property. The court concluded the legislature did not intend for property to be partly marital and partly nonmarital. Subsequently, in the cases of *In re Marriage of Smith* (1981), 86 Ill. 2d 518, 427 N.E.2d 1239, and *In re Marriage of Rogers* (1981), 85 Ill. 2d 217, 422 N.E.2d 635, the supreme court held nonmarital property commingled with marital property became marital property. Again, the court concluded that property could not be marital in part and nonmarital in part.

■ The effect of *Smith* and *Rogers* was modified by the General Assembly by amendment to section 503(c) of the Act (Pub. Act 83–129, eff. Aug. 19, 1983 (1983 Ill. Laws 1526, 1528)) to provide that when property of one classification is commingled with that of another so that its identity is lost, the property becomes marital property, but the estate making the contribution will be reimbursed for the value of the contribution if that can be ascertained. (Ill. Rev. Stat.

1983, ch. 40, par. 503(c).) This legislation is the only modification of the unitary property principle we have previously described. Here, the 235 shares of stock came from neither a marital nor a nonmarital estate but from a third party. The shares were paid for by marital funds, although at a bargain price. They had to be either marital or nonmarital property. The payment of the purchase price from marital funds prevented the property from being nonmarital. We do not deem the fact that the price set by the seller gave the respondent a substantial bargain constitutes a contribution by the nonmarital estate of the respondent entitling that estate to reimbursement from the marital estate pursuant to the present provisions of section 503(c) of the Act.

Accordingly, we hold the circuit court's decision to classify the 235 shares of stock as marital property was supported by the record. We affirm the decree from which appeal was taken.

Affirmed.

KNECHT, P.J., and STEIGMANN, J., concur.