*In re* MARRIAGE OF ROBERT E. CLEVELAND, Petitioner-Appellant, and FRANCES H. CLEVELAND, Respondent-Appellee.

First District (4th Division)    Nos. 79-1810, 79-2057, 79-2386 cons.

Opinion filed August 6, 1981.—Rehearing denied September 22, 1981.

Heinze, Scovell & Associates, of Palatine, for appellant.

Beermann, Swerdlove, Woloshin, Barezky & Berkson, of Chicago (Miles N. Beermann and Howard A. London, of counsel), for appellee.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

The marriage of Robert E. Cleveland and Frances H. Cleveland was dissolved on January 6, 1978. The issues of permanent maintenance, child support, distribution of property, attorney's fees and all other issues were reserved by the court to be heard as a bifurcated matter.

After extended evidentiary hearings, the court entered a supplemental judgment and order on August 10, 1979. The order settled the issues of maintenance, custody and child support, and disposed of property of the parties. On September 27, 1979, the court entered an order apportioning attorney's fees. On October 24, 1979, the court entered an order staying enforcement of the supplemental judgment pending appeal. On November 16, 1979, the court entered an order vacating the October 24, 1979, order. Petitioner, Robert E. Cleveland, was ordered to transfer certain stock certificates to respondent. Petitioner brings a consolidated appeal from the orders of August 10, September 27 and

November 16, 1979. He raises the following issues for review: (1) whether the trial court erred in determining marital and nonmarital property; (2) whether the trial court erred in awarding marital and nonmarital property to the respondent; (3) whether the trial court erred in awarding respondent cash in lieu of alleged missing personal property; (4) whether the awards of maintenance and child support were excessive; (5) whether the trial court erred in ordering petitioner to pay the major portion of the legal fees; and (6) whether the trial court erred in vacating the stay order pending appeal.

We affirm.

Petitioner and respondent were married on January 2, 1967. At the time of the marriage, petitioner owned a house in Northbrook, Illinois. The parties moved into the house and resided there until their separation in 1977. In 1976, the petitioner quit claimed his interest in the marital residence to his wife.

In 1969, the parties adopted a son, Robert Scott. The child has continued to reside with his mother. In 1977, after the parties separated, an attorney was appointed guardian ad litem to protect the interest of Robert.

On September 12, 1978, an order was entered granting the respondent exclusive possession of the marital home and ordering the petitioner to move out. On January 6, 1979, a judgment for dissolution was entered.

On July 10, 1979, the trial court began to hold hearings for the disposition of property, maintenance and child support. Child custody was not an issue. The court held separate hearings on each asset to determine its origin and the source of funds used to acquire the assets. We shall present the findings as summarized by the trial court.

### The House

The house in Northbrook was acquired by petitioner prior to marriage. Title remained in petitioner's name until the house was conveyed by quit-claim deed to respondent. Petitioner claimed that he placed the realty in respondent's name to avoid possible claims of the Internal Revenue Service. Respondent was to reconvey the property at a later time. Respondent denied that the transfer was temporary. She testified that petitioner had promised, prior to the conveyance, to give her the home so that she and Robert would have a place to live if petitioner lost his tax case. Petitioner ceased making mortgage payments after October 1977.

### Florida Lot

This was divided 50/50. Petitioner testified that he purchased the lot for $5500 in 1973. He said that he had purchased it with funds received from distribution of his mother's estate.

## U.I.P. Stock

Stock in the United Improving and Investing Corporation was valued at $9600. Petitioner obtained the 2400 shares during the marriage. He claimed, however, that the stock was purchased with funds received as gifts from his mother. The stock was divided 50/50.

## Flying Tiger Stock

Stock valued at $11,250 was acquired in 1975. Petitioner claimed that the stock was purchased with funds he inherited from his mother. The stock was divided 50/50.

## Airlift Int'l Stock

Shares were valued at $1600. Respondent was awarded 9/16 of the shares; petitioner was awarded 7/16 of the shares.

## Chrysler Stock

One hundred shares of Chrysler stock, valued at $880, were purchased in the name of respondent. Respondent was awarded the 100 shares.

## Personalty

Petitioner was awarded a 1974 Buick automobile; respondent was awarded a 1977 Buick automobile. Petitioner was awarded a Norman Rockwell etching and his personal effects. Respondent was awarded a piano, a color television, a black and white television, washer, dryer, and various other furnishings located on the premises of the home in Northbrook.

## Value of Property Awarded

| Marital Property: | Respondent | Petitioner |
|---|---|---|
| Home | $65,000 | . . . . . |
| Florida Lot | 2,750 | $2,750 |
| U.I.P. Stock | 4,800 | 4,800 |
| Flying Tiger Stock | 5,625 | 5,625 |
| Airlift Int'l Stock | 900 | 700 |
| Chrysler Stock | 880 | . . . . . |
| Cash in lieu of missing property | 13,200 | . . . . . |
| | $93,155 | $13,875 |

*Nonmarital Property*

| | |
|---|---:|
| Gillette Stock | $32,000 |
| A.T. & T. Stock | 3,600 |
| Brunswick Stock | 13,700 |
| Chrysler Stock | 5,300 |
| Contran Stock | 10, 600 |
| S. G. Securities | 4,000 |
| | $69,200 |

Respondent was named custodian of securities, stocks, bonds and bank accounts to be held in trust for the benefit of the child, Robert. This property was valued in excess of $28,000. In addition, petitioner was ordered to pay $400 per month for child support.

Respondent was awarded maintenance of $800 per month for a period of 8 years, a total of $76,800. The court determined that the house awarded respondent has a value of $65,000, net. This was deducted from the maintenance award, leaving a remainder of $11,800. The remainder of $11,800 for maintenance plus the $13,200 cash in lieu of personal property amounted to $25,000, which the petitioner was ordered to pay over to respondent after he had satisfied claims of the Palatine Bank.

The order entered September 27, 1979, awarded attorneys' fees as follows: $4350 to the attorney representing the child, Robert—$2233.34 was to be paid by petitioner, $1116.66 was to be paid by respondent and $1000 was to be paid from the bank account held for the benefit of Robert; $14,750 to the attorney representing respondent—$9833.34 was to be paid by petitioner and $4916.66 was to be paid by respondent.

On September 7, 1979, petitioner filed notice of appeal from the supplemental judgment entered on August 10, 1979. On September 11, 1979, respondent filed a petition for a rule to show cause seeking to compel the petitioner to comply with the judgment. The petition alleged that Mr. Cleveland had failed to transfer the stock and bank accounts awarded to their minor son. Moreover, Mr. Cleveland had failed to convey to Frances her interest in marital property awarded by the court.

On October 24, 1979, petitioner filed a motion to stay enforcement of the supplement judgment. The motion was granted. On November 5, 1979, respondent filed a motion for reconsideration of the stay. On reconsideration, the court vacated the stay order on November 16, 1979. This order empowered a judge to act on petitioner's behalf and to assign to respondent her one-half interest in the marital property listed above. On December 11, 1979, petitioner filed notice of appeal. The appeals from the orders of August 10, September 27, and November 16, 1979, have been consolidated for review.

Petitioner contends there was no finding that the house was marital or nonmarital property. Petitioner claims where the purpose of the transfer

was to defeat the claims of creditors, he is entitled to have his property restored to him. Petitioner further argues that even if he fails to rebut the presumption of gift, the home is transmuted into marital property because the transfer occurred during the marriage.

■■ In a memorandum opinion dated July 24, 1979, which was incorporated into the supplemental judgment of August 10, 1979, the court addressed petitioner's claim that he was entitled to have his property restored to him after the threat of tax liability had diminished. The court discussed the factors which weighed in favor of petitioner's contention that a resulting trust was created. The factors were: petitioner owned the house prior to conveyance; he lived there until September 1978; and he paid the mortgage, taxes and insurance until September 1978. The court found the following factors which would indicate a gift to respondent: petitioner wanted to protect his wife and child; the deed was absolute on its face; there was no contrary documentary evidence; petitioner had delivered the deed to wife; petitioner ignored the foreclosure proceedings once he realized that wife claimed the title; wife made payments of principal, interest, taxes and insurance to redeem the property from foreclosure on October 31, 1978; wife lived in the home; and since October 31, 1978, wife has made the mortgage payments. The court found the factors evidencing a gift more convincing. Property voluntarily conveyed from husband to wife, without fraud or coercion, is presumed to be a gift even though husband may have purchased the property with his own money. (*West v. West* (1979), 77 Ill. App. 3d 828, 831-32, 396 N.E.2d 1382, 1385.) Moreover, the court, on equitable grounds, declined to restore property to a grantor who conveys to defraud his creditors. We do not find the trial court's findings of a gift contrary to the manifest weight of the evidence.

■■ Section 503(b) of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 503(b)) (hereinafter Act) does not prevent married persons from owning property separately during the marriage and disposing of it in any fashion that the property-owning spouse may choose. (*Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 573, 376 N.E.2d 1382, 1386-87.) Further, a spouse may by agreement, either express or implied, or by gift, transmute an item of separate property into marital property. (*Klingberg v. Klingberg* (1979), 68 Ill. App. 3d 513, 516, 386 N.E.2d 517, 520.) Moreover, where a spouse commingles nonmarital property with marital property by investing nonmarital funds in the marital home, a court may refuse to trace the investment and refund it to the paying spouse. See *In re Marriage of Rogers* (1981), 85 Ill. 2d 217, 422 N.E.2d 635.

Thus, on a transmutation theory, the court could have found that the Northbrook home was marital property. It was described as "marital

property" in the supplemental judgment. Section 503 of the Act classifies as "marital property" that which becomes subject to distribution upon termination of the marriage. (*Kujawinski*, at 575.) The statute requires the court to divide the marital property "in just proportions" considering all relevant factors, and the statute lists 10 different factors which are to be considered. (*In re Marriage of Atkinson* (1980), 82 Ill. App. 3d 617, 629, 402 N.E.2d 831, 836.) But, the statute does not require that marital property be divided in equal portions. *In re Marriage of Stallings* (1979), 75 Ill. App. 3d 96, 100, 393 N.E.2d 1065, 1067.

It would appear that the court treated the home as marital property when its value was deducted from the gross maintenance award. Section 504(b) of the Act provides that relevant factors in the award of maintenance are the financial resources of the party, including marital property apportioned to him. In the memorandum opinion accompanying the supplemental judgment, the court stated that it must take the value of the home into consideration in order to achieve a fair property settlement. This was done when the value of the home was deducted from the gross maintenance award.

■■ Petitioner claims error in awarding respondent shares of stock which he claims as nonmarital property. However, the petitioner did not produce evidence of the source of purchasing funds. He testified that the shares were paid for with funds inherited from his mother, which funds were on deposit in his checking account. Section 503 of the Act defines marital property as all property acquired by either spouse subsequent to the marriage. (*Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 572, 376 N.E.2d 1382, 1386.) The presumption is overcome by showing that the source of the property was an exclusion set forth in section 503(a). (*Klingberg v. Klingberg* (1979), 68 Ill. App. 3d 513, 516, 386 N.E.2d 517, 520.) Petitioner offered no evidence to substantiate the source of funds used to purchase stock during the marriage. Thus, petitioner has not overcome the presumption. We find no error in the trial court allocations of shares of stock acquired during the marriage.

Respondent was awarded cash in lieu of missing personal property. Testimony was that the missing property consisted of silver, crystal, china, and family heirlooms. Petitioner admitted that some of the items had been purchased by respondent prior to their marriage. Petitioner claimed the items had been taken in a burglary and he gave an estimate of $15,000 as the value. But, some items were later found consigned to a storage company. The petitioner's name appeared on the receipt. In the memorandum opinion, the court found that it is more probably true that petitioner took the personalty. The court used petitioner's valuation in arriving at compensation of $13,200 for the missing personalty. We do not find this determination an abuse of discretion.

Section 504 of the Act provides that the court may award maintenance to either spouse if the spouse seeking maintenance is unable to support himself through appropriate employment or is otherwise without sufficient income. See *In re Marriage of Lloyd* (1980), 81 Ill. App. 3d 311, 401 N.E.2d 328.

■■ The trial court made an award in gross of $800 per month for 8 years, a total of $76,800. The court stated that marital property allocated to the wife should be deducted from the award. The court then deducted the value ($65,000) of the marital home from the award in gross. Petitioner was ordered to pay $11,800. Petitioner claims that the award of maintenance and the award of child support are excessive. We do not agree.

■■ Petitioner was 56 years old and a practicing attorney. Though he had suffered some adversities, he had begun to resume his practice. Respondent was 50 years old and unemployed. The evidence was that she had worked part-time after the parties separated. But, full-time employment, for the present, was not feasible because respondent had a back injury. The court found that respondent needed $1200 per month to support herself and the child. Thus, the court awarded $400 per month for child support and an award in gross for maintenance. The form and the amount of maintenance lies within the discretion of the trial court. (*In re Marriage of Lloyd* (1980), 81 Ill. App. 3d 311, 313, 401 N.E.2d 328, 330.) It will not be set aside on appeal unless contrary to the manifest weight of the evidence. *Riordan v. Riordan* (1977), 47 Ill. App. 3d 1019, 1024, 365 N.E.2d 492, 497.

Petitioner contends the trial court abused its discretion by ordering him to pay a major portion of the attorneys' fees. Section 506 of the Act permits the court to assess either or both parents, or the child's separate estate for the costs and fees of the child's attorney. The cash property of the child's estate consisted of a $10,000 certificate of deposit and $1400 in miscellaneous bank accounts. It was agreed by the parties that the child's property was to be kept for educational expenses. The court ordered that $1000 of the child's bank account be used to pay the attorney. The court then allocated the balance as follows: $2233.44 from petitioner and $1116.66 from respondent. This allocation does not appear to be an abuse of discretion.

■■ Section 508 of the Act permits the court to order one spouse to pay a reasonable amount of the attorney's fees of the other spouse after the court has considered the financial resources of the parties. The granting of fees in a divorce case is proper when there is a showing of the financial inability of one party to pay the fees and the ability of the other to do so. *Christian v. Christian* (1979), 69 Ill. App. 3d 450, 458, 387 N.E.2d 1254, 1260; *Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 581, 373 N.E.2d 576, 579.

Petitioner was ordered to pay $9833.34 of the $14,750 fee awarded the attorney representing the respondent. Petitioner contends that the fee is excessive and that respondent is in a better position to pay inasmuch as she was awarded most of the property. It is sufficient to support the award of fees that the party seeking the fees would be stripped of his or her financial resources if required to pay. *Christian*, at 458.

The record shows that respondent was awarded $25,000 cash, representing maintenance in gross and the award in lieu of property. Her living expenses of $800 per month would exhaust this award in 2½ years. The remaining property—shares of stock and the home—if converted to cash, would leave respondent without resources and a place to live. Courts have sustained an award of fees even where the party seeking the award had an income or salary, a savings account, stocks, securities, or other liquid assets or real estate. (*Donnelly v. Donnelly* (1980), 80 Ill. App. 3d 597, 600, 400 N.E.2d 56, 59.) At the time of the trial, respondent was unemployed. But, even when employed, respondent earned only $4.50 per hour. We do not think that respondent should exhaust her limited resources to pay her attorney's fees. See *Christian v. Christian* (1979), 69 Ill. App. 3d 450, 387 N.E.2d 1254.

■■ Petitioner claims that the division of property left him destitute. The stock that he owned was pledged as collateral for a $43,000 debt. Petitioner claims that other debts have left him with limited financial resources. But, the trial court was well apprised of the relative financial position of the parties and the resources available to them. The allowance of attorney's fees is within the discretion of the trial court and will not be reversed unless the trial court has clearly abused its discretion. *Donnelly*, at 599.

Respondent's attorney submitted a petition that he spent 166.2 hours on the case and set a rate of $200 per hour for court time and $125 per hour for office time. The court reduced the amount awarded to $100 per hour for court time and $75 per hour for office time to arrive at the sum of $19,750. Respondent had paid the attorney a $5000 retainer, leaving a balance of $14,750. Petitioner was ordered to pay $9833.34.

■■ Attorney's fees are awarded in the sound discretion of the trial court. In awarding fees, consideration is given to a variety of factors including the time and labor involved. The time factor is probably given the same or greater weight than any other factor. (*Donnelly v. Donnelly* (1980), 80 Ill. App. 3d 597, 602, 400 N.E.2d 56, 59.) But the allowance should be only in such amount as will compensate for services rendered, and must be fair and just to all parties concerned, namely, the attorney to be compensated, the client, and the person required to make the payment. *Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 582, 373 N.E.2d 576, 579.

Petitioner contends that a great part of the attorney's time was spent

attempting to vilify and prejudice the court against him. The petitioner, however, did not contradict the amount of time expended or show that the attorney wasted an excessive amount of time. The record shows that considerable time was spent trying to search out facts and records. The memorandum opinion to the supplemental judgment stated that it appeared the petitioner intentionally kept no records of his tangled dealings, used phony names on his bank accounts, and hid cash in safe deposit boxes in other names.

■■ Notwithstanding the extensive expenditure of time and labor, the financial ability of the person required to make the payment may limit the amount to be awarded. (*Donnelly v. Donnelly* (1980), 80 Ill. App. 3d 597, 604, 400 N.E.2d 56, 59.) Petitioner testified that he worked 15 hours per week for a law firm and earned $200 per week, net, a rate of approximately $13 per hour. Petitioner also claimed net income averaging $17,000 for the years of the marriage. We do not find the trial court's determination that petitioner had the resources to pay a portion of the attorneys' fees an abuse of discretion. See *In re Marriage of Rogers* (1980), 86 Ill. App. 3d 904, 908, 408 N.E.2d 448, 452.

Finally, the petitioner claims the trial court erred when it vacated a stay order and allowed enforcement of the supplemental judgment.

Section 413 of the Act provides that an order directing payment of money for support or maintenance shall not be suspended or the execution thereof stayed pending the appeal.

Petitioner moved for a stay order, requesting specifically that the court stay that portion of the supplemental judgment which ordered petitioner to pay respondent $11,800. The stay was granted. On reconsideration, the court stated that the stay had been granted in error. The court was not aware that the $11,800 payment represented maintenance.

In the comments to section 413(a) it is stated that this provision creates a category of nonstayable orders whose purpose is to provide for the sustenance of the dependent spouse and children during the appeal process. Thus, we find no error in vacating the stay order.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

ROMITI, P. J., and JIGANTI, J., concur.