*In re* MARRIAGE OF JOANNE M. COOK, Petitioner-Appellee, and JOHN L. COOK, Respondent-Appellant.

First District (2nd Division)   No. 82—1411

Opinion filed September 6, 1983.

Law Office of Douglas P. Trent, of Wheaton (Douglas P. Trent and C. Stanley Austin, of counsel), for appellant.

Kalcheim & Kalcheim, Ltd., of Chicago (Ilene E. Shapiro, of counsel), for appellee.

JUSTICE PERLIN delivered the opinion of the court:

Respondent, John L. Cook (John), appeals the property distribution portion of a judgment dissolving his marriage to petitioner, Joanne M. Cook (Joanne). On appeal, John contends that the trial court erred in finding that Joanne's interest in certain property was nonmarital; in evaluating the property owned by the parties; in finding that the temporary maintenance order entered by the court "without prejudice" was proper and that Joanne should receive temporary maintenance; in finding that John had dissipated marital assets; in awarding to Joanne the majority of marital assets in lieu of permanent maintenance; and in directing John to contribute $30,000 to Joanne's attorney fees. For the reasons hereinafter stated, we affirm the judgment of the trial court.

John and Joanne were married on June 13, 1953. The marriage produced two sons, both now emancipated. On May 11, 1978, Joanne filed a petition for dissolution and for partition of the marital home. On May 25, 1978, John filed an answer to Joanne's petition, and on December 6, 1978, he filed a counterpetition for dissolution.

Both of the parties hereto filed numerous pretrial motions and petitions for rules to show cause, including a myriad of unsuccessful requests by Joanne for the production of documents seeking to establish John's financial status. On October 2, 1979, Joanne filed a petition for temporary maintenance and for "suit money." A temporary maintenance order was entered on December 14, 1979, directing John to pay to Joanne $500 semi-monthly "without prejudice pending a final determination relative to any award of temporary maintenance." John did not voluntarily comply with this or subsequently repeated maintenance orders, including some agreed to by both parties. The trial court noted that some 17 rules to show cause were requested by Joanne's attorneys in an attempt to compel John's compliance with temporary maintenance orders and on one occasion a body attachment order was entered.

On October 23, 1980, Joanne "confessed" to the grounds for dissolution alleged in John's amended counter-petition. The parties agreed to a bifurcated hearing (Ill. Rev. Stat. 1979, ch. 40, par. 401, as amended), and on November 17, 1980, the trial court entered an order dissolving their 27-year marriage. A property distribution hearing began in June 1981 but was continued until January 11, 1982, following a mistrial ordered after the judge originally assigned to this case was transferred.

The testimony established that Joanne, aged 49 and in apparent good health, held an undergraduate degree in recreation. She was a

homemaker until 1969 when she was employed as the bookkeeper and later the general manager of Just-Rite Coffee Service Company, owned in part by Dr. Elmer J. Justema. In 1972, Joanne entered into a real estate investment partnership with Doctor Justema, designated "J & J #1" (the partnership).

John, aged 53, also in apparent good health, held a degree in chemical engineering and had been engaged in the plastics business since 1958. He testified that he was employed as a manufacturer's representative for J.L. Cook Plastics and J.L. Cook Company (operated as one entity) of which he was sole owner. He also owned or had interests in several other businesses, including American Coil (of which he was sole proprietor); Metric Tool & Die Company (a screw machine company in which he owned a 50% interest); Cotronics, Inc. (a molding company in Logansport, Indiana); Tanfastic (a suntanning facility); and Alprod, Inc. and Porta-Chef Kane (the record does not establish the nature of these businesses).

Affidavits submitted by the parties indicate that at the time of trial John's monthly personal expenses totaled $2,738.53 and Joanne's monthly personal expenses were approximately $2,280. A credit application signed by Joanne in October 1978 and admitted into evidence indicates that while she was employed by Just-Rite Coffee Service, her monthly income was approximately $2,900 (including the $1,000 per month temporary maintenance to be paid by John). Joanne stated that she had not been employed since August 1979.

At the conclusion of 10 days of hearings, and following an exhaustive review of approximately 109 exhibits and a record in excess of 3000 pages, a task which the trial court labels "a long and laborious process," the trial court found that John's income from his various businesses was "unclear."[1] The court noted that John "has not filed any federal individual income tax returns since 1978. He has no personal checking account. He keeps no formal business records in regard to J.L. Cook Company and J.L. Cook Plastics. He personally keeps no check book, no ledger, and no journal ***."

The court found that prior to October 1980 John maintained two business-checking accounts, one used for payroll and the other for the operation of J.L. Cook Plastics. Since October 1980, John has operated J.L. Plastics on a "cash basis." Bank deposit records of J.L.

---

[1] In a colloquy with the trial court, John's attorney advised the court that he had explained to John that "[the Judge] has reviewed all of the exhibits and *** heard the trial testimony, and I am sure [the court] made mental corrections in regard to the briefs."

Cook Plastics produced by John indicate that total deposits of $261,379 were made in 1978 to the J.L. Cook Plastics account, whereas the 1978 Federal individual tax return prepared by John indicates that he earned only $29,000. Bank statements for 1979 reflect total deposits of $331,556 and for the first 10 months of 1980 total deposits of $270,588.

John failed to submit evidence to reconcile apparent discrepancies between reported income and bank deposit records. The limited financial data proffered by John consisted principally of a financial statement prepared by a certified public accountant, Thomas Lane (Lane), who had been hired by John's attorney in July 1980 to prepare "payroll sheets and financial statements" for use in the trial. Lane did no accounting for John's businesses prior to this time. The court noted that "Mr. Lane never took a physical inventory of the plant. He relied on [John's] representations in preparing the balance sheet and financial statements." Lane testified that he reviewed bank statements and cancelled checks for the business checking account prior to October 1980 and customer invoices and handwritten summaries prepared by John.

In making its findings and in rendering its decision the trial court noted that it had "taken into consideration all of the guidelines and factors delineated in the Illinois Marriage and Dissolution of Marriage Act, including the various subsections thereto, and arguments of counsel, cases cited therein ***." Thereafter, the trial court found that marital assets, with a combined value in excess of $600,000, included the marital home at 801 Cleveland, Hinsdale, Illinois; a vacant lot in Vilas County, Wisconsin; an industrial building and real estate in Sandwich, Illinois, owned by J.L. Cook Plastics; certain furniture and furnishings in the marital home; two Cadillac automobiles; and John's various business interests.

The trial court found that Joanne owned nonmarital property including her interest in J & J #1 Partnership; her interest in certain household furniture and furnishings; jewelry; and approximately $50,000 in stock purchased by her with the inheritance received from her father's estate and held in her name alone. The trial court assigned this nonmarital property to Joanne and in addition awarded to her, in lieu of maintenance, the marital home, the furniture and furnishings in the marital home not assigned to her as nonmarital property, the Wisconsin property and her 1978 Cadillac automobile. The court awarded to John his various business interests, the industrial building and real estate in Sandwich, Illinois, and his 1979 Cadillac automobile.

After the parties waived a hearing on fees, the court allowed attorney fees based upon petitions filed by the attorneys for both parties. John was directed to contribute $30,000 toward Joanne's attorney fees and $30,000 to his attorney. Joanne was directed to pay $20,000 to her attorney. The court ordered John to sell his 700 shares of Cotronics, Inc., stock to pay the attorney fees, and a lien was impressed on the stock in favor of Joanne's attorneys to the extent of fees allowed.

On May 26, 1982, a written judgment was entered conforming to the court's findings and award of attorney fees. John appeals from that judgment. The portion of the judgment directing the sale of the Cotronics, Inc., stock was stayed by this court pending the disposition of this appeal.

■ John initially contends that the trial court erred in finding that Joanne's interest in certain property was nonmarital. Specifically, John disputes that Joanne's interest in J & J #1 Partnership was nonmarital property. John urges that the evidence establishes that Joanne's $30,000 initial investment in the partnership was acquired during their marriage as the result of a loan to her from her father, Lee Vogt (Vogt). Joanne maintains that the money was a gift to her alone from her father.

Generally, all property acquired by either spouse during the marriage is presumed to be marital property, regardless of how title is held. (Ill. Rev. Stat. 1979, ch. 40, par. 503(b).) A spouse seeking to rebut this presumption has the burden of presenting evidence which clearly shows that the property was acquired by an excepted method enumerated in section 503(a) of the Act, such as by gift. (Ill. Rev. Stat. 1979, ch. 40, par. 503(a); see generally *In re Marriage of Smith* (1981), 86 Ill. 2d 518, 530-31, 427 N.E.2d 1239.) A gift is a voluntary, gratuitous transfer of property by one to another where the donor manifests an intent to make such a gift and absolutely and irrevocably delivers the property to the donee. (*Dudley v. Uptown National Bank* (1960), 25 Ill. App. 2d 514, 520-21, 167 N.E.2d 257.) Moreover to prove a gift it must be shown that the donor has relinquished all present and future dominion and power over the subject matter of the gift. *In re Marriage of Simmons* (1980), 87 Ill. App. 3d 651, 654, 409 N.E.2d 321.

Here, Mr. Vogt, who was 72 years old when in 1972 he gave the money to his daughter Joanne, his sole heir, raised the money by borrowing against his insurance policies, converting a certificate of deposit and obtaining a $17,000 mortgage on his home. Vogt died in January 1974 and Joanne contends that he intended to make a gift to

her of the $30,000 as an advance on her inheritance. John, however, maintains that Vogt intended to be repaid and telephoned often to inquire about repayment. Although denied by Joanne, John claimed that he had several conversations with her regarding repayment arrangements. John also attempted to demonstrate Vogt's intention to be repaid by introducing into evidence 13 cancelled checks drawn on Joanne's Oak Brook Bank account, payable to Vogt and containing a notation "mortgage payment." Joanne conceded that she gave these checks to her father but denied that they were given as partial repayment of the $30,000. She stated that she agreed to help her father make the mortgage payments "when she was financially able."[2]

It is well established that conflicts in testimony must be resolved by the trier of fact. (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356, 226 N.E.2d 624.) A reviewing court will not reverse a trial court's findings of fact unless they are palpably against the weight of the evidence. (*Collins v. Nugent* (1982), 110 Ill. App. 3d 1026, 1037, 443 N.E.2d 277.) After observing the demeanor of the parties and weighing the evidence, the trial court here concluded that Joanne's interest in the partnership resulted from a gift from her father. From our review of the record we conclude that the trial court's finding was not palpably against the weight of the evidence, and thus it should not be set aside.

■ John also contends that, even if Joanne's original investment in the partnership resulted from her father's gift to her, she thereafter acted in such a manner that her interest in the partnership was transmuted from nonmarital to marital property.

As heretofore noted, section 503(b) of the Act presumes all property to be marital unless it is shown to have been acquired by an excepted method specified in section 503(a). Nonmarital property may, however, be transmuted to marital property by affirmative acts of a party such as transferring title of nonmarital property into some form of coownership (*In re Marriage of Smith* (1981), 86 Ill. 2d 518, 532, 427 N.E.2d 1239) or depositing nonmarital funds into a joint bank account from which marital expenses are paid (*In re Marriage of Leon* (1980), 80 Ill. App. 3d 383, 385, 399 N.E.2d 1006). Here, John suggests that transmutation of Joanne's interest in the partnership resulted from Joanne's actions in the marital home which were allegedly made on behalf of the partnership, including use of the family telephone for partnership business and the maintaining of records of part-

---

[2]It is clear that if Vogt gave the $30,000 to Joanne and in addition himself serviced the mortgage cost, he would have expended substantially in excess of $30,000.

nership accounts. John also contends that Joanne purchased airline tickets for partnership business with nonmarital funds that had been allegedly commingled with marital funds in Joanne's Oak Brook bank account.

Joanne denied commingling the marital and nonmarital funds and testified, without contradiction, that during the marriage she maintained two separate and distinct bank accounts, one in an Oak Brook bank for her individual and partnership use (although she states that she had paid from this account some marital expenses including "various household repairs, maintenance and improvements") and one in a Naperville bank from which most marital expenses were paid. The source of funds from the Oak Brook account included the gift from Joanne's father, her income from Just-Rite Coffee Service and her inheritance. All of the contributions to the Naperville account were made by John, although the account was in Joanne's name alone.

Nonmarital funds in a bank account retain their nonmarital character unless the owner of the funds, by affirmative acts, demonstrates an intent to change such funds to marital. (*In re Marriage of Smith* (1981), 86 Ill. 2d 518, 531, 427 N.E.2d 1239.) Here, the evidence indicates no affirmative acts by Joanne that would demonstrate an intention to change either her Oak Brook account or her interest in the partnership from nonmarital to marital.

John also contends that the trial court erred in finding that certain stocks, furniture, furnishings and jewelry were Joanne's nonmarital property. Joanne had submitted an affidavit to the trial court listing many items of personal property, and she testified at great length that each item was acquired by her either through inherited funds, by gift or from income from nonmarital funds. (Ill. Rev. Stat. 1979, ch. 40, par. 503(a).) John's challenge to the trial court's findings in this instance is based on the same arguments (acquired through marital funds or transmutation) used to challenge the court's conclusion that Joanne's interest in J & J #1 Partnership was nonmarital. Again, John has failed to rebut evidence presented by Joanne which indicates that these items were acquired pursuant to section 503(a), thereby making them nonmarital property. We must, therefore, agree with the trial court's conclusion that the personal property listed in Joanne's affidavit and the stocks which she purchased and held in her name alone were nonmarital property and were properly assigned to her.

Next, John contends that the trial court, using outdated financial data, erred in evaluating the business interests of the parties.

It has long been settled that the value of marital assets must be

established in the record so that a court of review may determine the propriety of a trial court's apportionment of such marital property. (*In re Marriage of Kundit* (1982), 107 Ill. App. 3d 310, 314, 437 N.E.2d 777.) Here, after carefully and thoroughly analyzing the testimony of the witnesses, financial statements submitted by a certified public accountant engaged by John's counsel, the credit applications signed by John and John's answers to interrogatories, the trial court found that the value of John's business interests amounted to $254,300[3] including: J.L. Cook Plastics - $120,000; Cotronics - $38,000; Metric Tool & Die Co. - $30,000; American Coil - $23,000; Alprod, Inc. - $22,300; Porta-Chef Kane - $10,000; J.L. Cook Company - $6,000; Tanfastic - $5,000. The court also established the value of Joanne's interest in J & J #1 Partnership as $8,720.

Our review of the record dictates our conclusion that John has failed to provide sufficient financial data to mandate a reversal of the trial court's evaluation of the parties' various business interests.[4]

■ John contends that the trial court erred in its finding that Joanne was entitled to temporary maintenance. He argues that such finding was improper in the absence of a hearing and that Joanne was not entitled to temporary maintenance because she was capable of obtaining employment and also as a result of the property which she possessed. John asserts that this finding is contrary to the evidence and to the requirements of section 504(a) of the Act (Ill. Rev. Stat. 1979, ch. 40, par. 504(a)), which authorizes a maintenance award only if the court finds that the spouse seeking maintenance lacks sufficient property to provide for her reasonable needs and is unable to support herself through appropriate employment or is otherwise without sufficient income. It has been held, however, that when the basis for an award of maintenance has been established in the record, specific findings as to the statutory basis used by a trial court in awarding such maintenance are not required. *In re Marriage of Coram* (1980), 86 Ill. App. 3d 845, 848, 408 N.E.2d 418.

---

[3]In connection with the evaluation of John's assets the trial court noted that "[John], through his accountant, gave certain values to these assets. Other values were given in credit applications and still other values were given in answers to interrogatories." This variance made difficult the court's assessment of asset value. The court properly, in our opinion, adopted "mean" (average) value.

[4]We find no support in the record for John's contention that the value of J.L. Cook Plastics should be diminished by approximately $111,000 allegedly owed to the Federal government in payroll taxes. The court found that, although at trial John claimed to owe payroll taxes for 1979, 1980 and 1981, his tax returns at no time indicated his liability for payroll taxes.

Here, Joanne was unemployed and living outside the marital home during the pendency of these proceedings while John continued to earn income. The record indicates that Joanne's monthly expenses were approximately $2,280. At the time the temporary maintenance order was entered, the trial court was aware of John's reluctance to comply with requests for the production of financial data. Moreover, the record indicates that a full hearing on the issue of temporary maintenance was precluded by the numerous continuances requested by the parties. In our judgment the order of temporary maintenance was not unreasonable.

■ John next asserts that the trial court erred in finding that he had dissipated marital assets.

Section 503(c)(1) of the Act (Ill. Rev. Stat. 1979, ch. 40, par. 503(c)(1)) directs the trial court, when apportioning marital assets, to consider "the contribution or dissipation of each party in the acquisition, preservation or depreciation or appreciation in value, of the marital and non-marital property ***." The trial court found that John "attempted to dissipate and reduce the value of the marital property."

Our review of the record reveals ample support for this finding. Prior to the parties' marital problems, John regularly maintained the payments of mortgage and taxes on the various properties owned by the parties. Subsequent to the filing of this action, however, John failed to make the monthly payments necessary to preserve and maintain the property. The court found that as a result of John's actions, mortgage foreclosure proceedings were held resulting in the sale of the marital home for $72,000. The marital home had been appraised in 1981 at $270,000 to $310,000, whereas at the time of judgment the marital interest in that property was reduced to a right of redemption. Also John had not paid the property taxes on the parties' Wisconsin property. AT&T stock, held jointly by the parties was ordered sold, the proceeds to be applied to the payment of these property taxes and to contribute, in part, to the payment of the arrearage of temporary maintenance. John also failed to pay the taxes on the Wisconsin property which accrued *after* the sale of the AT&T stock. As a result, additional property taxes encumbered the Wisconsin property when it was awarded to Joanne.

The record also indicated that John defaulted on a loan secured by the Sandwich, Illinois property and at the time of the trial a mortgage foreclosure action on the Sandwich property was pending.

John, without citation of authority, seeks to avoid a finding of dissipation of marital assets on the ground that his obligation to pay maintenance to Joanne rendered him incapable of maintaining their

marital assets. Our review of the record, however, persuades us that in fact John made little effort to comply with the court's temporary maintenance orders or to maintain the marital assets.

■ To compensate Joanne for the dissipation in value of these marital assets and in lieu of maintenance, the trial court awarded to Joanne a majority of marital assets. John contends that this award was erroneous and that Joanne should have been required to establish that she was entitled to receive permanent maintenance prior to an award of property in lieu of maintenance.

It is generally held that the purpose of the Act is to make the division of property the primary means of providing for the future financial needs of the spouses. (*Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 576, 376 N.E.2d 1382; *In re Marriage of Smith* (1981), 100 Ill. App. 3d 1126, 1130, 427 N.E.2d 1262; *In re Marriage of Rothbardt* (1981), 99 Ill. App. 3d 561, 566, 425 N.E.2d 1146.) Moreover, where it is shown that an award of periodic support cannot be relied on or the party ordered to make such payments is shown to be dilatory in paying his bills, an award of property in lieu of maintenance may be appropriate. See *In re Marriage of Gan* (1980), 83 Ill. App. 3d 265, 271, 404 N.E.2d 306.

Here, the record indicated that sufficient marital assets, valued in excess of $600,000, existed to provide for the parties' post-marital financial needs. Furthermore, John's apparent unwillingness to comply with court orders was evident. Under these circumstances, therefore, the court's award to Joanne of marital assets in lieu of maintenance was not error.

■ Finally, John contends that the trial court erred in directing him to contribute $30,000 toward Joanne's attorney fees.

An award of attorney fees in dissolution proceedings rests within the sound discretion of the trial court, and the exercise thereof will not be disturbed on review unless such discretion is clearly abused. (*In re Marriage of Brophy* (1981), 96 Ill. App. 3d 1108, 1117, 421 N.E.2d 1308.) Fees granted should provide fair compensation for reasonable and necessary services determined by the court after considering the financial position of the parties; the skill and standing of the attorneys employed; the importance, novelty and difficulty of the questions raised; the time and labor required; the usual and customary charge in the community; and the benefits resulting to the client. *Donnelley v. Donnelley* (1980), 80 Ill. App. 3d 597, 602, 400 N.E.2d 56.

Here, the trial court considered the petitions for fees submitted by the parties' attorneys as well as the conduct of the parties. The

court concluded that John's conduct made necessary an unusual amount of legal services and as a result directed him to pay $30,000 of the $50,000 awarded to Joanne's attorneys. In view of John's failure or inability to comply with court orders and procedures, and in view of his failure to document his finances and to demonstrate his inability to pay the prescribed fees, we are unable to conclude that the trial court erred in its judgment.

As previously noted, that portion of the trial court's judgment directing the sale of the Cotronics stock was stayed pending disposition of this appeal. In view of our decision such stay is dissolved.

For the reasons herein stated, the judgment of the trial court is affirmed.

Affirmed.

DOWNING, P.J., and HARTMAN, J., concur.