**In re the Marriage of Susan Starr HAALAND, petitioner, Appellant,**

v.

**Osul Theodore HAALAND, Respondent.**

**No. C5–85–2376.**

Court of Appeals of Minnesota.

Aug. 12, 1986.

Jack S. Jaycox, Nancy E. Murphy, Jack S. Jaycox Law Offices, Ltd., Bloomington, for appellant.

Eric W. Forsberg, Minneapolis, for respondent.

Heard, considered and decided by RANDALL, P.J., and LANSING and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

Susan Haaland appeals from a trial court order entering amended findings and judgment and denying her motion for a new trial. Appellant contends that the trial court erred when it found a $20,000 down payment on the homestead was marital property, when it failed to find a non-marital interest in certain properties, when it ordered $800 a month in spousal maintenance for three years, and when it denied appellant's motion to reopen the record based on the discovery of new evidence. In his notice of review, respondent Ted Haaland claims that the trial court erred when it ordered $800 spousal maintenance for three years and reserved the issue thereafter, and when it refused to reimburse him for certain expenses he paid to maintain real estate owned by the parties. We affirm.

### FACTS

The parties were married in June 1973 and a judgment of dissolution was entered in June 1985. They had no children, but appellant had three emancipated children from a previous marriage. At the time of the dissolution, appellant was 48 and respondent was 46.

At the time of the dissolution respondent's net income was approximately $1,800 a month. Appellant had not been employed since 1980. Prior to that she had held several clerical positions. Also from 1977–1980 appellant was president of her own company that supplied flowers to hospital gift shops. At the dissolution hearing appellant indicated that she wanted to attend the University of Minnesota to obtain a degree in marketing or public relations. A rehabilitation psychologist who had tested and evaluated appellant testified that she was currently capable of working full time and that it would be best for her to secure employment and earn her bachelor's degree through a part-time program.

In 1981 appellant was diagnosed as having carpal tunnel syndrome, a condition which causes pain and weakness in her hands and wrists. Appellant has also been diagnosed and treated for migraine headaches and arthritis. Both appellant's treating physician and the rehabilitation psychologist had recommended that she attend the Minneapolis Pain Clinic. However, at the time of the hearing she had not done so. While appellant's medical condition imposes some limitations on her activity, both doctors testified that she was currently employable.

Shortly before the parties' marriage, they purchased a home. The down payment for the home was partially funded by $20,000 from appellant's mother. There was conflicting testimony about the source and nature of this contribution. Respon-

dent asserted that appellant's mother gave the money to both appellant and himself as a wedding gift. Appellant alternatively claimed that the money was from her brother's estate or a gift only to appellant from her mother.

During their marriage appellant and respondent also bought several parcels of land in northern Minnesota. The funds for this land came from refinancing the homestead and the parties' joint account. The money in the parties' joint account came from several sources including both parties' incomes and appellant's trust account. When the parties married, appellant had a trust account for the money she received from her first husband's estate and her father's estate. During her marriage to respondent appellant maintained the trust account separately from the parties' other funds. She used the funds to make loans to her children and to help support them. She also deposited some of the funds in the parties' joint account which was used to pay all of their living expenses.

The trial court found that the $20,000 used for the down payment on the homestead was marital property and made a roughly equal division of the property. In addition respondent was required to pay appellant $800 a month maintenance for three years.

## ISSUES

1. Did the trial court err when it found appellant had not met her burden of establishing that the $20,000 down payment was non-marital?

2. Did the trial court err in finding that certain northern Minnesota properties owned by the parties as joint tenants were marital property?

3. Did the trial court abuse its discretion when it ordered respondent to pay $800 per month for three years and reserved jurisdiction?

4. Did the trial court abuse its discretion in dividing the marital property between the parties?

5. Did the trial court abuse its discretion when it refused to grant a new trial or reopen the record based on newly discovered evidence?

6. Did the trial court abuse its discretion when it refused to award respondent half of the expenses he paid to maintain the northern Minnesota properties?

## ANALYSIS

### I.

Appellant argues that part of the homestead was acquired from the $20,000 that she received as her non-marital property. Under Minn.Stat. § 518.54, subd. 5 (1984) non-marital property includes property acquired "as a gift, bequest, devise or inheritance made by a third party to one but not to the other spouse." The party asserting that property is non-marital must prove by a preponderance of the evidence that the asset was acquired through investment of non-marital property. *Pearson v. Pearson*, 363 N.W.2d 337, 339 (Minn.Ct. App.1985).

The parties presented conflicting testimony about the source of the $20,000. The trial court found:

At trial, [appellant] testified that the $20,000 that was used for the down payment had been her share of her brother's estate and that she had received the $20,000 from her mother because her mother was the administratrix of the estate. [Appellant's] testimony was inconsistent with previous positions that she had asserted during the pendency of this action, that the $20,000 was a gift. In her deposition by written interrogatories, [appellant's] mother, Annette Starr, stated that the $20,000 was [appellant's] share of her brother's estate * * *. However, this is at variance with the New York State probate records, which reflect that [appellant's] mother claimed to be the sole distributee of her brother's estate[1]. Respondent consistently main-

1. At oral argument appellant sought to raise the

issue that these records were inadmissible un-

tained throughout the proceedings that the $20,000 had been a gift to both parties from [appellant's] mother about the time of their marriage so that they could purchase the homestead.

The trial court's findings of fact will not be set aside unless they are clearly erroneous and due regard is given to the trial court's opportunity to judge the credibility of the witnesses. Minn.R.Civ.P. 52.01; *Ruzic v. Ruzic,* 281 N.W.2d 502, 503 (Minn.1979). In this case a determination of the nature of the $20,000 depended solely on the testimony of the witnesses because the documentary evidence had been destroyed. Under these circumstances, we can discern no error in the trial court's findings.

## II.

■ Appellant argues that the northern Minnesota properties were partially non-marital for two reasons. First, she claims that the money for the down payment on these properties came from a refinancing of the homestead and because the $20,000 down payment on the homestead was non-marital, those funds can be traced to the northern Minnesota properties. Our determination that the trial court did not err in finding the $20,000 down payment was marital property precludes this argument.

Appellant also claims she transferred funds from her trust account to the parties' joint account and that this money was used to fund the northern Minnesota properties. The facts show and the trial court found that funds from many sources were placed in this joint account. Appellant made no attempt to segregate her trust funds once they were deposited in the parties' joint account. From this joint account appellant and respondent paid their daily living expenses, financed the purchase of several parcels of land, financed improvements to the homestead, made loans to appellant's children, and disbursed monies for various other reasons.

Where all funds pass through a general fund such as this and there is no attempt to segregate the funds by their source, "[t]he presumption that property acquired during the marriage is marital controls." *Rudbeck v. Rudbeck,* 365 N.W.2d 330, 334 (Minn.Ct.App.1985). By commingling her trust account fund with the general family finances and using the funds on general living expenses any non-marital character of the funds was lost. *See Linderman v. Linderman,* 364 N.W.2d 872, 877 (Minn.Ct. App.1985).

## III.

Both parties contend that the trial court abused its discretion by ordering respondent to pay appellant spousal maintenance of $800 a month for three years. Appellant argues this sum should be greater. Respondent argues that appellant does not require maintenance for a rehabilitation period and that the trial court should not have reserved the issue.

■ The trial court has broad discretion in ordering spousal maintenance. *Broms v. Broms,* 353 N.W.2d 135, 137 (Minn.1984). This court will not disturb an award of spousal maintenance absent a clear abuse of discretion. *Id.* Under Minn.Stat. § 518.552, subd. 1 (1984) spousal maintenance is appropriate if a spouse does not have sufficient property to meet her reasonable needs and is unable to gain adequate support through employment. If these circumstances exist, then the court must consider the financial needs of the spouse requesting maintenance and that spouse's ability to meet those needs and the financial condition of the spouse providing the maintenance. *Novick v. Novick,* 366 N.W.2d 330, 334 (Minn.Ct.App.1985).

■ The trial court found that appellant had substantial marital and non-marital assets, and that she was presently employable, but further education would enhance her employment opportunities. In light of

der Minn.R.Evid. 613. We note, however, that this claim was not raised at trial, nor in appellant's motion for a new trial, nor in appellant's statement of the case on appeal, nor in the appellant's brief to this court. Under these circumstances, the issue is not properly before this court for review.

these findings the trial court's order for spousal maintenance was within its discretion. Neither do we find the trial court's reservation of the maintenance issue for future consideration to be an abuse of its discretion. The facts showed that the progression of appellant's medical condition was uncertain and could entail future medical needs. *See Van de Loo v. Van de Loo,* 346 N.W.2d 173, 178 (Minn.Ct.App.1984).

## IV.

Appellant argues that the trial court in its amended findings acknowledged that the IRA account awarded to appellant was predominantly a non-marital asset and that this change decreased her share of the marital property. The division of property determined by a trial court will not be disturbed unless there is an abuse of its broad discretion. *Taylor v. Taylor,* 329 N.W.2d 795, 797 (Minn.1983). Minn.Stat. § 518.58 (1984) requires that a division of marital property be just and equitable but not necessarily equal. *Ruzic v. Ruzic,* 281 N.W.2d 502, 505 (Minn.1979).

■ In the present case the trial court initially attempted to make an equal division of the marital property. However, the amended findings on the non-marital nature of the IRA left respondent with approximately $6,700 more in marital assets. This difference is not inequitable, however, when viewed in conjunction with the trial court's findings that during the parties' separation respondent paid $9,683.04 to maintain the northern Minnesota properties; $800 a month spousal maintenance and $11,336.07 in joint debts. The property division is certainly equitable when these payments are considered. *See Ferguson v. Ferguson,* 357 N.W.2d 104, 107 (Minn.Ct. App.1984). We find the trial court's division of the marital property to be within its discretion.

## V.

■ Appellant also claims the trial court abused its discretion when it refused to grant a new trial or reopen the record based on newly discovered evidence. One item of evidence appellant had just discovered was insurance information to show how much money she had received from her first husband's estate. Appellant claimed she discovered these documents when she cleaned out her garage after the hearing. At the hearing she stated she had not reviewed the documents from her first husband's estate since 1980. One of the requirements for admitting newly discovered evidence is that the evidence could not have been discovered earlier through the exercise of due diligence. *Vikse v. Flaby,* 316 N.W.2d 276, 284 (Minn.1982). Appellant clearly had the proffered documents in her control before the hearing and could have discovered them had she simply looked through the garage.

■ Appellant also sought to have the trial court consider an affidavit of her mother, Annette Starr, that she was mistaken when she stated the $20,000 was appellant's share of her brother's estate. Rather, Starr asserts in the affidavit, the $20,000 was a gift from her to appellant from Starr's inheritance from her son. Once again this evidence was easily discoverable before the hearing and therefore is not proper grounds for a new trial. Additionally, appellant presented testimony at the dissolution hearing that the $20,000 was a gift to her alone from her mother. That testimony is the equivalent of Starr's post-trial affidavit.

## VI.

■ The trial court found that respondent had paid $9,683.04 to maintain the northern Minnesota properties. In his motion for amended findings and conclusions respondent asked for an amended conclusion providing that he would receive half this amount, $4,841.52, from the proceeds of the sale of the property. The trial court denied this motion and found:

that respondent's contributions toward the expenses of maintaining the Northern Minnesota property during the parties' separation should be appropriately borne by him based upon the relative

incomes of [appellant] and [respondent] during their separation. Such payments were in the nature of temporary relief in order to meet the parties' joint obligations.

Denial of respondent's request for reimbursement was well within the trial court's discretion particularly in light of the somewhat disproportionate division of the marital assets.

### DECISION

The trial court did not abuse its discretion in determining that the $20,000 used for a down payment on the homestead and that several parcels of real estate in northern Minnesota were marital property. The trial court did not abuse its discretion in its division of marital property or by ordering respondent to provide appellant with $800 a month spousal maintenance for three years and reserving the issue for further consideration. The trial court did not abuse its discretion by denying respondent's request to be reimbursed for expenses he paid to maintain marital property. The trial court did not abuse its discretion by denying appellant's motion for a new trial or to reopen the record.

Affirmed.