**In re the Marriage of Charles Foster GRIFFITH, Petitioner, Appellant,**

v.

**Agnes Lucille GRIFFITH, Respondent.**

**No. C4–87–235.**

Court of Appeals of Minnesota.

Dec. 1, 1987.

Review Denied Feb. 12, 1988.

Doris C. McKinnis, Patricia A. Callaghan, John D. Hagen, Jr., Minneapolis, for appellant.

Barbara Zander, Gunderson, Swenson & Zander, Albert Lea, for respondent.

Heard, considered, and decided by FORSBERG, P.J., and WOZNIAK and STONE,* JJ.

## OPINION

STONE, Judge.

Charles Griffith appeals from a judgment of the trial court dissolving the parties' marriage and dividing their property. Charles claims the trial court erred in its division of property and in awarding $332 of attorney fees to respondent Agnes Griffith. We affirm the award of attorney fees, but reverse and remand for proper distribution of the parties' property.

## FACTS

Charles and Agnes Griffith were married in 1974 and had two children during their marriage, now ages 12 and 9. The parties resided in Alaska until 1983 when they moved to Minnesota. Charles commenced dissolution proceedings in 1986.

Prior to the marriage, Charles owned several parcels of real property located in Fairbanks, Alaska. A number of transactions involving the property took place prior to and during the marriage. Charles usually deposited proceeds from any sale of these properties in the parties' joint checking or savings accounts.

At the time of trial the parties owned three parcels of real property: the parties' homestead, valued at $115,135; an adjacent vacant lot, valued at $19,560; and a commercial lot, valued at $38,300. Charles claimed each of these items of real property was either a non-marital asset of his or an asset traceable to a non-marital asset of his. He produced evidence to establish that the proceeds of the sale of his non-marital assets were used to purchase or develop the real property.

The trial court found Charles failed to meet his burden of proving that some portion of the parties' real estate was his non-marital property. The court stated that Charles "failed to demonstrate his intent to maintain the property as his sepa-

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn.Const. art. 6, § 2.

rate property by commingling the proceeds with joint marital property, by deeding the real estate to [Agnes] and himself jointly, and by failing to maintain adequate records to substantiate his claim." The trial court treated all of the real property as marital property and divided it between the parties.

The trial court also found that Charles was the primary caretaker of the parties' minor children and awarded custody of the children to Charles.

After trial, Charles brought a motion requesting the trial court to receive additional evidence. The trial court denied the motion and awarded $332 to Agnes for her attorney fees in defending the motion. Charles appeals from the trial court's judgment, claiming his non-marital assets were not taken into account and that the award of attorney fees was an abuse of discretion.

## ISSUES

1. Did the trial court abuse its discretion in its division of the parties' property?

2. Did the trial court abuse its discretion in awarding attorney fees to respondent?

## ANALYSIS

### I.

■ Charles did not make a motion for a new trial. When there has been no motion for a new trial, the scope of review is limited to determining whether the evidence sustains the findings of fact and whether such findings sustain the conclusions of law and judgment. *Gruenhagen v. Larson*, 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976).

In dividing property in a dissolution, there is a presumption that property acquired by either spouse subsequent to marriage is marital property. Minn.Stat. § 518.54, subd. 5 (1986). This presumption may be overcome by showing that all or part of an asset was acquired through investment of non-marital property. *Id.* Non-marital property or the non-marital portions of marital property are excluded from the court's division of marital proper-

ty. Minn.Stat. § 518.58 (1984); *see Nardini v. Nardini*, 414 N.W.2d 184 (Minn.1987).

Charles claims the trial court erred by not awarding him his non-marital interests in the three parcels of real property owned by the parties. Prior to the marriage, Charles owned several parcels of real property located in Fairbanks, Alaska. One parcel, located on Geist Road, contained the childhood home of Charles and his brother. The two brothers purchased the property from their parents in 1973. This lot was split into two parcels; one parcel was sold in 1975, the other was sold in 1976. The brothers split the proceeds from these sales equally; Charles deposited his share of the proceeds, $57,500, into the parties' joint checking account.

Prior to the marriage, Charles owned an unimproved lot located on Chena Ridge in Alaska. In 1976, after the parties' marriage, Charles placed the Chena Ridge property in the names of both parties. This property was sold in 1982 for $80,000, and the proceeds of the sale were placed in the parties' joint savings account. Shortly after the sale of the Chena Ridge property, the parties purchased some commercial property in Fairbanks for $35,000, using the money from the sale of the Chena Ridge property. The parties made improvements on the commercial lot at a cost of $16,000, again using the proceeds from the sale of the Chena Ridge property.

In 1973, again prior to his marriage, Charles purchased additional land with his brother; lots 3 and 4 in McKinley Acres. Shortly after the marriage, Charles and his brother split the McKinley Acres property, Charles taking lot 3 and his brother taking lot 4. Two years later the parties purchased lot 4 from Charles' brother, and Charles quitclaimed his interest in lot 3 to himself and Agnes as joint tenants. Charles and Agnes then built their homestead on lot 3. The improvements for this home were funded out of the parties' joint checking account, which contained the proceeds from the sale of the Geist Road property.

■ Charles produced evidence to establish that the Geist Road property and

the Chena Ridge property were his prior to marriage and that the proceeds from the sale of these two properties were $57,500 and $80,000, respectively. Although Charles put proceeds from the sale of his property in the parties' joint checking accounts "[s]imply routing the funds through a joint account 'does not transform non-marital property into marital property.'" *Nash v. Nash,* 388 N.W.2d 777, 781 (Minn. Ct.App.1986) *rev. denied,* August 20, 1986; *quoting Montgomery v. Montgomery,* 358 N.W.2d 169, 172 (Minn.Ct.App.1984). It is also true that the property was in the name of both Agnes and Charles. Yet, "merely transferring title from individual ownership to joint tenancy does not transform non-marital property into marital property." *Montgomery,* 358 N.W.2d at 172.

This court's 1984 opinion of *Kottke v. Kottke,* 353 N.W.2d 633 (Minn.Ct.App.1984) rejected the claim that non-marital assets placed in a joint checking account were transmuted into marital assets. In *Kottke,* the respondent had put a $27,000 inheritance check, which was her non-marital property, into the parties' joint checking account. The parties then paid off a $20,800 debt owed to respondent's uncle. The $20,800 had been used to purchase a lot and build a home. This court found "the weight of the evidence supports the finding that the inheritance is readily traceable" and affirmed the trial court's decision that the parties' home was acquired in part by exchange of respondent's inheritance. *Id.* at 636.

■ The proceeds from the Chena Ridge and Geist property sales were traced, item by item, through detailed evidence at trial, in which the assessment by the trial judge of the credibility of witnesses was not involved. The evidence clearly establishes that the Chena Ridge and Geist Road properties were Charles' property prior to marriage. The homestead, vacant lot and commercial lot properties were clearly traceable to Charles' pre-marital property ownership.

The legislature has recognized nonmarital property, and Minnesota is not a "community property" state. Thus we hold that

the "readily traceable" test required by *Kottke* was met in this case, and it was error for the trial court to conclude all of the real property was marital property.

*Haaland v. Haaland,* 392 N.W.2d 268 (Minn.Ct.App.1986) is distinguished. There a question was presented as to whether the money originally used to buy the property was a gift to both parties, to one, or a bequest. Further in *Haaland* there were commingled funds from many sources placed in the joint account and various disbursements made for a variety of reasons. Unlike the instant case, in *Haaland* the tracing was not clear cut.

We remand this case for the trial court to award the sum of $137,500, which represents the proceeds from the Chena Ridge and Geist pieces of property, to Charles, as his non-marital property. The trial court should divide the remaining value of the parties' real property, $35,495, equitably between the parties. The trial court may, if it finds unfair hardship, award part of the non-marital portion to Agnes. *See* Minn.Stat. § 518.58.

## II.

■ Charles also claims the trial court erred by awarding Agnes the attorney fees she incurred in defending a motion to reopen the dissolution hearing. Allowance of attorney fees in a dissolution case rests almost entirely within the discretion of the trial court. *Solon v. Solon,* 255 N.W.2d 395, 397 (Minn.1977), *rehearing denied* July 11, 1977.

After trial, and before the decision of the trial court, Charles sought to reopen the case to admit newly discovered evidence. The evidence consisted of a letter from an employee of the county child protection agency, relating to the fitness of Agnes to parent the children. Charles claimed Agnes improperly failed to supply a copy of this letter in response to discovery requests. The trial court denied Charles' motion. It found that the additional evidence was available to Charles during the week of trial for review, and that Charles had not shown due diligence in discovering the evidence. The court then awarded Agnes

$332 for attorney fees in defending the motion. The award of attorney fees was within the discretion of the trial court, pursuant to Minn.Stat. § 549.21 (1986).

## DECISION

The trial court's judgment is reversed and the case is remanded for the trial court to award Charles his non-marital assets in accordance with this opinion. The trial court may, if it finds undue hardship, award part of the non-marital property to Agnes. The trial court's order awarding Agnes attorney fees is affirmed.

Affirmed in part, reversed in part and remanded.

FORSBERG, Judge (dissenting):

I respectfully dissent. During the marriage, the parties never maintained separate accounts. Respondent was a signatory on the business account. All income, whether wages, loans, dividends, real estate proceeds, or income tax refunds was deposited in the joint accounts. All real estate was either purchased in both names or transferred into joint tenancy. The parties made no differentiation in the source of funds when they made their expenditures. All household expenses, construction expenses, real estate taxes, and personal income tax expenses were paid out of the joint accounts.

At trial appellant failed to establish the value of the various pieces of real estate at the time of the marriage, or the time of the divorce. He could not demonstrate what portion of any increase in value was non-marital. He did not show what portions of the installment payments were principal and which were interest. He made no showing that the increase in value of the homestead was equal to the cost of the improvements.

Instead, he attempted to demonstrate that the proceeds from the real estate were used exclusively to fund the acquisition of additional real estate and the capital improvements on the real estate, and that the other income to the family was used exclusively to fund the normal household expenses. The trial court found that he did not meet his burden:

Petitioner has failed to sustain his burden of proof on the issue of demonstrating that some portion of the parties' real estate is his separate non-marital property. He has failed to demonstrate his intent to maintain the property as his separate property by commingling the proceeds with joint marital property, by deeding the real estate to Respondent and himself jointly, and by failing to maintain adequate records to substantiate his claim. Petitioner attempts to demonstrate retrospectively that he intended to maintain the proceeds from his real estate as his separate non-marital property, while admitting that installment payments, taxes and insurance on said properties were paid with marital funds. During the course of their marriage, Petitioner never maintained an account upon which Respondent was not a signatory. Respondent contributed all funds from her non-marital assets, namely, Calista and Bethel, to the parties' mutual benefit. All monies earned or received by the parties were deposited in their joint accounts. All assets were held jointly. The business was in both parties' names. Improvements to the house, and installment payments on the house were made out of the same account that the parties used to pay all their bills, buy groceries and into which they deposited their wages.

I believe that the trial court did not err in determining that the property was insufficiently traced, particularly since this was a 13–year marriage when funds were passing in and out of the joint accounts. As this court stated in *Haaland v. Haaland*, 392 N.W.2d 268 (Minn.Ct.App.1986):

Where all funds pass through a general fund such as this and there is no attempt to segregate the funds by their source, "[t]he presumption that property acquired during the marriage is marital control." *Rudbeck v. Rudbeck*, 365 N.W.2d 330, 334 (Minn.Ct.App.1985). By commingling her trust account fund with the general family finances and using the funds on general living expenses any

non-marital character of the funds was lost. *See Linderman v. Linderman,* 364 N.W.2d 872, 877 (Minn.Ct.App.1985). *Id.* at 272.

This case also presents a question not yet considered by the Minnesota Supreme Court (nor specifically addressed by the statute), and that is whether nonmarital property may be transmuted to marital property. Courts seem to have adopted the following differing theories on how nonmarital assets are transmuted to marital assets:

(1) Nonmarital property simply cannot transmute into marital. This rule at least has the advantage of certainty. *Wade v. Wade,* 72 N.C.App. 372, 381, 325 S.E.2d 260, 269, *rev. denied,* 313 N.C. 612, 330 S.E.2d 616 (1985).

(2) Nonmarital can be changed into marital property if the owner demonstrates by affirmative acts an intent to change such property to marital property. *In re Marriage of Cook,* 117 Ill.App.3d 844, 849–50, 73 Ill.Dec. 222, 227, 453 N.E.2d 1357, 1362 (1983). Since this represents what the parties would want, it is the fairest solution. It has, however, the distinct disadvantage of uncertainty and will tend to be decided on a case by case basis.

(3) Transmutation may occur by virtue of change in ownership or by commingling of nonmarital property with marital property. This rule has the advantage of certainty and more or less tracks with the intention of the parties.

(4) By agreement, either express or implied or by gift, an item of separate property may be transmuted into marital property. *In re Marriage of Cleveland,* 99 Ill. App.3d 293, 298–99, 54 Ill.Dec. 610, 614, 425 N.E.2d 475, 479 (1981).

This court appears to have adopted the first theory, except that it permits what is described as tracing. "Tracing" may exist even in cases where there is a title change (i.e., creation of a joint tenancy) or a commingling of funds. This appears to be more of a "tracing" by accounting techniques than actual, physical tracing. *See Nash v. Nash,* 388 N.W.2d 777, 781 (Minn. Ct.App.1986), *pet. for rev. denied* (Minn. Aug. 20, 1986); *Montgomery v. Montgomery,* 358 N.W.2d 169, 172 (Minn.Ct.App. 1984). Moreover, commingling as referred to in this line of cases is not only a matter of mixing assets, but is also an actual transfer of title from one spouse to the other. If such a "gift" from one spouse to another is not a transmutation of property from nonmarital to marital, parties then are powerless to jointly or at least implicitly agree to effectuate such a change.

However, in *Haaland* this court seems to adopt theory number 3 by creating a presumption which is virtually impossible to rebut and is essentially what was held in *In re Marriage of Holman,* 122 Ill.App.3d 1001, 1006–08, 78 Ill.Dec. 314, 318, 462 N.E. 2d 30, 34 (1984). I urge adoption of theory number 3, which would result in affirmance of the trial court on this issue.