In re the Marriage of Darlene Heinrich
SMITH, Petitioner, Respondent,

v.

Gerald David SMITH, Appellant.

No. C6–86–2106.

Court of Appeals of Minnesota.

Aug. 4, 1987.

Review Denied Sept. 30, 1987.

Robert F. Henson, Henson & Efron, P.A., Minneapolis, for respondent.

Jack S. Jaycox, Jack S. Jaycox Law Offices, Ltd., Bloomington, for appellant.

Heard, considered and decided by HUSPENI, P.J., and WOZNIAK and CRIPPEN, JJ.

## OPINION

HUSPENI, Judge.

Appellant Gerald Smith argues that the trial court in this dissolution action abused its discretion in valuing an asset, dividing property, failing to give credit for expenditures made during the pendency of the action which were necessary to preserve the marital estate and in awarding attorney's fees. Respondent Darlene Smith has filed a notice of review and contends that in the property division the court abused its discretion in crediting appellant with money he received through inheritance but which he comingled with marital assets during the marriage. We affirm.

## FACTS

The parties were married in 1959 and have three children, all of whom are now over 18. During the marriage, the parties became involved in several partnerships which own real estate and contracts for deed. Various members of the parties' families were also involved in the partnerships. Appellant and respondent were both actively involved in the real estate business, and both managed the rental properties owned by the partnerships. Their income was derived from management fees charged to the partnerships based on five percent of the gross rental income and from the cash flow generated by the properties.

By the time this dissolution action was commenced in April of 1984, the relation-ship between appellant and respondent had deteriorated to the point where they could not work cooperatively. They agreed that they could not continue as co-owners of any of the properties following the dissolution.

The trial court found the total value of the marital estate to be $2,565,055, and that appellant had enhanced the marital estate by $122,500 he had inherited from his father during the marriage, although the money could not be traced to any specific asset. The court awarded appellant assets valued at $122,500 in excess of those awarded to respondent in recognition of this enhancement. The court's division resulted in respondent being awarded assets valued at $1,221,277 and appellant being awarded assets valued at $1,343,778. In making the division, the trial court awarded interests in three of the real estate partnerships to respondent and five to appellant. Appellant was awarded the Winnetka Village Apartments, which represents approximately 37 percent of the property owned by the parties. Three contracts for deeds were awarded to respondent and one to appellant.

## ISSUES

Did the trial court abuse its discretion in:

1. Valuing Winnetka Village Apartments,

2. Dividing the property,

3. Failing to allow appellant credit for expenditures required to preserve the marital estate during the pendency of this action,

4. Ordering appellant to pay one-half of respondent's attorney's fees, and

5. Allowing appellant credit for enhancement of the marital estate?

## ANALYSIS

### I.

The parties stipulated to the values of all properties except Winnetka Village Apartments. Both presented expert testimony from appraisers regarding the value of that complex, and the trial court adopted the

valuation offered by respondent's appraiser, Howard Lawrence. Appellant argues that the trial court should have made findings explaining why it accepted Lawrence's valuation when appellant's expert, David Berg, had offered a different figure.

The supreme court has stated that the trial court's valuations

should be supported by either clear documentary or testimonial evidence or by comprehensive findings issued by the court.

*Ronnkvist v. Ronnkvist*, 331 N.W.2d 764, 766 (Minn.1983). In adopting Lawrence's valuation, the trial court found:

[Respondent's] appraiser performed a cash equivalency appraisal which encompassed the traditional approach of combining values arrived at through replacement cost analysis, comparative sales analysis and capitalization of net income (using a capitalization rate of 9.0%).

Appellant asserts that this finding is not sufficiently detailed to explain why the court adopted Lawrence's valuation. However, the finding does summarize the methodology used by Lawrence. He determined that the income approach to valuation, using a nine percent capitalization rate, would yield a value of $7,100,000. The comparison of sales approach would place the value at $8,400,000, and the value based on replacement cost would be $8,000,000. Lawrence stated that a potential buyer

would consider what apartment buildings have been selling for, the sales prices, how big they are. He would look at the economics, very important, but he would forecast the future a little more. The one I have is kind of a sterile figure on that date. He would sense the future and then he would compromise in his mind which number should be better or best guide. He would consider what others have sold for * * *.

Lawrence's testimony indicates that he attempted to reflect the process of compromise that a potential buyer would complete, rather than merely averaging the figures yielded by the three approaches to valuation, as appellant has alleged. Lawrence compromised the figures resulting from

the comparative sales and income approaches, concluding that the value of Winnetka Village Apartments was $7,800,000.

In contrast, appellant's appraiser Berg placed little emphasis on comparative sales when valuing the property for the purposes of this dissolution action. However, two years earlier, he too had relied on comparative sales when valuing the property for the purposes of refinancing. After speculating on the possible effect of pending changes in the federal tax laws, Berg shifted to reliance on the income approach. Using a nine and one-half percent capitalization rate and more current income figures than those available to Lawrence, he arrived at a value of $7,168,000.

We further note that in adopting a nine and one-half percent capitalization rate for use in the income approach to valuation, Berg acknowledged that there is no consensus on which rate to use and that selection of a rate is a matter of opinion among appraisers. He further acknowledged that the lower the rate used, the higher the resulting value. Lawrence used a nine percent rate, which consequently would yield a higher value than that resulting from the rate used by Berg. Had Berg also used a nine percent rate, his valuation would have been closer to Lawrence's figure. Given the subjective process of selecting a capitalization rate, we cannot require the trial court to accept an appraisal based on a nine and one-half percent rate rather than nine percent.

While the trial court's finding does not go into detail as to why it accepted Lawrence's approach to valuation rather than Berg's, the finding is sufficient to indicate that the court found Lawrence's methodology the "traditional approach." As this court has noted:

Where conflicting opinions of expert witnesses have a reasonable basis in fact, the trier of fact must decide who is right, and the decision will not be overturned on appeal.

*Griepp v. Griepp*, 381 N.W.2d 865, 869 (Minn.Ct.App.1986) (quoting *Ferguson v. Ferguson*, 357 N.W.2d 104, 107 (Minn.Ct. App.1984)). The trial court exercised its

discretion appropriately in determining which appraisal to accept.

## II.

 The trial court has broad discretion in property division and will not be reversed absent a clear abuse of discretion. *Justis v. Justis*, 384 N.W.2d 885, 888 (Minn. Ct.App.), *pet. for rev. denied*, (Minn. May 29, 1986). Minn.Stat. § 518.58 (1986) requires a just and equitable division of property, although such a requirement does not mandate that the division be equal. *Vinnes v. Vinnes*, 384 N.W.2d 589, 592 (Minn.Ct.App.1986). Under section 518.58, the court must consider factors such as amount and source of income, opportunity for future acquisition of capital assets and needs of the parties in determining what is a just and equitable division of property.

 The trial court's division resulted in a nearly equal distribution of assets between the parties. However, appellant argues that the court abused its discretion in awarding respondent properties with higher cash flow while awarding appellant properties that generate higher management fees.

Income producing assets awarded to appellant are:

| Apartments | Management fee | Cash flow |
|---|---|---|
| Winnetka | 52,200 | 4,585 |
| Emerson I | 8,867 | 940 |
| Emerson II | 5,074 | (2,500) |
| Bryant I | 4,284 | 11,195 |
| Emerson IV | 3,989 | 1,245 |
| Subtotal | 74,414 | 15,465 |

| Contracts for Deed | Annual Payment |
|---|---|
| Emerson | 6,740 |
| Total Income | 96,619 |

Income producing assets awarded to respondent are:

| Apartments | Management fee | Cash flow |
|---|---|---|
| Emerson III | 5,384 | 24,500 |
| L. Harriet | 7,307 | 11,360 |
| Bryant II | 8,388 | 17,740 |
| Subtotal | 21,079 | 53,600 |

| Contracts for Deed | Annual Payment |
|---|---|
| Maryland | no finding |
| Hawthorne | 5,600 |
| 38th St. | 13,630 |
| Subtotal | 19,230 |
| Total Income | 93,909 |

Appellant serves as a trustee for his aunt in the partnership which owns Winnetka Village Apartments. His mother is also one of the partners. The parties had agreed that following the dissolution, they would not be able to work together in managing any of the properties. As a result of appellant's involvement with Winnetka Village Apartments, it was appropriate to award that property to him. The property generates over $52,000 in management fees, but has a relatively small cash flow. All of the properties awarded to respondent generate both management fees and cash flow. Any reallocation between the parties of properties other than Winnetka would result in appellant's receipt of significantly more income than respondent. This would undermine the trial court's successful attempt to achieve a nearly equal division of income between the parties. The trial court properly exercised its discretion in making the property division.

## III.

Appellant states that during the pendency of this action he spent $7,000 for repairs to a boat owned by the parties. He argues that the trial court abused its discretion in failing to give him credit for this expenditure when dividing the property and awarding the boat to respondent.

 The court can consider the cost of maintaining property during the pendency of the action as one of the factors influencing its equitable division of property. *Haaland v. Haaland*, 392 N.W.2d 268, 273 (Minn.Ct.App.1986). However, it is a discretionary matter. *Id.* In this case, the parties separated more than two years prior to the final hearing. During that time, appellant had use of the boat. As a result, we conclude that it was within the trial court's discretion to decline to give appellant credit for the cost of repairing the boat.

 Appellant also points out that during the pendency of this action the parties were responsible for a $72,000 balloon payment on one of the properties. The pay-

ment was made without any contribution from respondent. Appellant argues that at the time the payment was due, the parties cashed a $20,000 bond. He applied his $10,000 share toward the payment, but respondent did not. Appellant does not argue that respondent was responsible for half of the $72,000 payment. He only argues that she should be required to contribute $10,000, the amount realized from the bond sale.

If appellant, as manager of the real estate business, found it necessary to supplement the income of that business from his separate assets in order to make the balloon payment, he could have requested either credit for this amount in the ultimate property division or an appropriate contribution from respondent. Appellant did neither. Instead, he argues that because he spent money from the bond sale for the real estate business, respondent should also have contributed her bond money. Under these circumstances, we cannot conclude that the trial court abused its discretion in denying the relief sought by appellant.

### IV.

Appellant argues that the trial court abused its discretion in awarding respondent half of her attorney's fees in the dissolution decree when it had earlier ordered appellant to pay $20,000 toward those fees. However, the court's findings and our review of the record indicate that the court credited previous payments and directed appellant to pay half of the remaining balance at the time the dissolution proceeding was concluded. Consequently, there was no duplication of the requirement to pay fees.

### V.

Through a notice of review, respondent challenges the trial court's decision to credit appellant with inherited funds which were comingled with marital funds and cannot be traced to specific assets owned by the parties. However, inasmuch as respondent sought to have this issue addressed only in the event of a modification of valuation or division of other properties, we do not address this issue.

### DECISION

The trial court did not abuse its discretion in valuing the property, making a property division, failing to allow credit for expenditures by appellant or awarding attorney's fees.

Affirmed.